## 'THOMASON vs. DILL.

[ACTION ON NOTE GIVEN FOR PURCHASE-MONEY OF SLAVE.]

'1. *Conclusiveness of judicial decisions.*—A decision of the supreme court is the law of the case in which it was pronounced, and is conclusive, both in the primary court, and on a second appeal.

.2. *When contract of sale is complete, and what constitutes valid modification.*—The rulings of the court in this case, in the matter of instructions to the jury, tested by the principles settled on a former appeal, (*Thomason v. Dill*, 30 Ala. 444,) and held correct.

APPEAL from the Circuit Court of Talladega. Tried before the Hon. S. D. HALE.

THIS action was brought by John F. Dill, against Francis M. Thomason, and was founded on the defendant's promissory note, under seal, for $800, the purchase-money of a slave. The defendant pleaded the general issue, in short by consent, with leave to give any special matter in evidence which might be a defense to the action; and plaintiff replied in like manner. The case was before this court, at its January term, 1857, when the judgment of the circuit court was reversed, and the cause remanded. See the case reported in 30 Ala. 444. The evidence offered on the second trial in the court below, as disclosed by the bill of exceptions in the present record, was substantially the same as on the former trial. A statement of the facts in detail may be found in the former report, above referred to; for the purposes of the present appeal, the material facts may be briefly stated thus:

The note sued on was given for the purchase-money of a slave, named Ellick, sold by plaintiff to defendant. The contract of sale was made on the 26th April, 1853; the note and bill of sale both being executed and delivered on that day. The negro, when brought up to be delivered to the purchaser, expressed great unwillingness to go with him; and the plaintiff's wife begged him to rescind the contract. The defendant refused to rescind, but left the negro in the plaintiff's possession; the latter promising to bring the negro, on the next morning, to Ashville. On the next day, the plaintiff carried the slave to Ashville with him, and again proposed a rescission of the contract; which the defendant again declined. The plaintiff then insisted that the defendant, in accordance with a proposition made by himself during the previous negotiations, should give a note with surety for the purchase-money; and to this the defendant assented. The character of this subsequent agreement—whether it amounted to a valid modification of the contract of sale, or was merely *nudum pactum*—was one of the principal points of controversy in the case. When the parties separated, the negro remained in the plaintiff's possession, and committed suicide a few days afterwards.

The defendant requested the court to give the following charges to the jury:

" 1. If the jury believe from the evidence that plaintiff sold the negro Ellick to defendant, and took the note sued on for the price, and delivered the bill of sale to defendant, and agreed to deliver the negro, on the next morning, in a condition to go with the defendant; and that he did not deliver said negro on the next morning, but was unwilling to do so, and, as a pretext for the non-delivery, set up that defendant had agreed to give him a note with surety, and refused good security when offered; and, as a further pretext for the non-delivery, insisted that he wanted the note with sureties who resided in the same county with defendant, and did not in fact deliver the negro to defendant, as he had agreed to do, but kept him until defendant could go and get such a note as he required; and that the negro died while thus

in plaintiff's possession, and was worth $800 at the time of his death,—then they should find for the defendant."

"2. If the jury believe from the evidence that plaintiff insisted on his right to have from defendant, before he would deliver the negro, a note with surety; and that defendant assented to this demand, (whether such assent is shown by direct and positive evidence, or only by facts and circumstances;) and that it was agreed that defendant should bring or send the note with sureties, as required by plaintiff, and should then have the negro,—this would amount to such a modification of the contract of the previous day, as would change it from an executed to an executory contract, and would leave the title in plaintiff; and that if the negro died before the time when the note with sureties was to be delivered, the death of the negro would be plaintiff's loss."

The refusal of these two charges, to which the defendant excepted, is now assigned as error.

MORGAN & MARTIN, for appellant.

PARSONS & J. WHITE, with B. T. POPE, *contra.*

STONE, J.—When this case was before in this court, (30 Ala. 444,) we laid down certain legal propositions, which, so far as they go, are the law of this case, and must not be lost sight of. The testimony on the former record, and in this, is not materially variant on any question which we propose to consider. Among the principles asserted by us when this case was first here, are the following: "The stipulations and agreements entered into, and reduced to writing, on the 26th April, 1853, amounted to an executed contract; passing the title of the slave to Thomason, and securing the payment of the purchase-money to Dill.    *    *    *    We think, however, that it should have been left to the jury, under appropriate instructions, to ascertain by their verdict—1st, whether the agreement of the second day was nothing more than a promise by Thomason to give a note with sureties, pursuant to his offer the day before, without any surrender or modification of his right to the slave; 2d,

whether the first note was considered inoperative, and the slave left with Dill in pledge that Thomason would give a new note with stipulated sureties; or, 3rd, whether by agreement the contract was so far modified as to be made executory,—Thomason's right to the slave not to attach until he executed and tendered the proposed note. If either the first or the second proposition be affirmed by the jury, the plaintiff, on a suitable complaint, will be entitled to a verdict. The third proposition would entitle the defendant to a verdict.    *    *    *    The testimony shows, that the slave remained with him (Dill) in each instance, by Thomason's permisson."

We thus declared, in effect, that during the time the negotiations of the 27th were being conducted, Thomason was negotiating in regard to a slave, the title to which was in him; and that the retention of the possession of the slave by Dill was at least permitted by Thomason. In construing the charges asked and refused, we must keep these facts in view.

Viewing these charges from the above stand-point, we do not think either of them should have been given. All the facts hypotheticated in the first charge asked, unaided by others, or by inferences to be drawn by the jury, are perfectly consistent with each of the three propositions stated in our former opinion, and are insufficient to determine whether this case falls within the one or the other of those classes. The second charge asked is almost equally defective. Stripped of the parts about which there is no contest, it makes Dill's right of recovery to hinge on the inquiry, whether he *insisted* on his right to have a note from Thomason with sureties, before he would deliver up the negro, and Thomason's assent to this *demand.* This is not necessarily an averment of a change or modification of the contract. Dill may have *insisted* on his right to have a new note with sureties, in virtue of the offer of Thomason, made the day before, to give such new note, if Dill should afterwards desire it. Thomason may have assented to this *demand,* (of a new note with sureties,) because he regarded it as *a matter of honor,* as testified by some of the witnesses. He may have left the slave in the

hands of Dill in pledge, or for his own convenience. Under the charge as asked, the defendant might have succeeded in his defense, in palpable disregard of the principles settled in this case on the former appeal. The defendant was not entitled to a verdict, unless the two parties, Dill and Thomason, agreed—in other words, their minds concurred—in a modification of the contract, such as was mentioned in our former opinion.

The exception to testimony is not insisted on here; and if it were, we think there is nothing in it.

Judgment of the circuit court affirmed.