JEFFERSON H. FOXWORTHY, PLAINTIFF IN ERROR, V. CITY OF HASTINGS, DEFENDANT IN ERROR.

1. **Municipal Corporations:** STREETS. Where a hotel was set back six feet and nine inches from the line of the lot, and the sidewalk extended from the hotel ten feet and ten inches into the street, that portion on the lot being constructed or paid for by the proprietor of the hotel, the whole being open to the public to pass and repass at pleasure, it will be deemed a part of the street of the city. REESE, CH. J., dissents.

2. ———: ———: OBSTRUCTION TO SIDEWALKS BY SNOW. Where a considerable quantity of snow has fallen, which, from the nature of the case, must have caused some obstruction on the sidewalks of the city, it is the duty of the city authorities, within a reasonable time thereafter, to remove or cause to be removed such obstruction. The falling of snow is sufficient notice.

3. ———: ———: NEGLIGENCE: QUESTION FOR JURY. The question whether the city is negligent in not removing the obstruction of snow and ice from the sidewalks is one of fact. *Nebraska City v. Rathbone*, 20 Neb., 288.

ERROR to the district court for Adams county. Tried below before GASLIN, J.

*J. R. Webster*, for plaintiff in error, on second instruction, cited: *Plattsmouth v. Mitchell*, 20 Neb., 232. *Tuck v. Ripon*, 52 Wis., 200. *Oliver v. City*, 69 Mo., 83. *Weare v. Fielding*, 110 Mass., 336. Fifth instruction: *Baltimore v. Marriott*, 9 Md., 174. *Nebraska City v. Rathbone*, 20 Neb., 292. Negligence: *Railroad v. Goodman*, 15 Wall., 401. *Lincoln v. Walker*, 18 Neb., 247.

*A. D. Yocum*, for defendant in error, cited: *Plattsmouth v. Mitchell*, 20 Neb., 228.

MAXWELL, J.

This action was brought by the plaintiff against the defendant for injuries received by him from a fall, alleged to have been caused by the accumulation of snow and ice on a sidewalk of said city, on the night of the 21st of January, 1886. The answer is, in effect, a general denial. On the trial of the cause the jury returned a verdict in favor of the defendant, and the action was dismissed.

The testimony tends to show that the plaintiff was a non-resident of Hastings, and arrived there on the night of the 21st of January, 1886, and rode from the depot to the Lepin Hotel. Soon after arriving at the hotel he started to go to a store near by, but having passed a few steps along the sidewalk, near the south-east corner of the hotel, he slipped and fell on the sidewalk, and sustained a fracture of the pelvis. There is no dispute as to this injury. It is shown to have been of a very serious character, and to have been caused by the plaintiff falling on the sidewalk. The attorney for the city, in the examination of witnesses, seems to have treated the injury as a trifling matter, of but little importance. The plaintiff testifies, in substance, that he passed out of the front door of the hotel, and that he supposed that he had walked from 27 to 30 feet from the door when he fell and sustained

the injury complained of. One William Sheesby, a resident of Hastings, called on behalf of the plaintiff, testified in regard to the obstructions of snow and ice on the sidewalk, as follows:

Q. When was the last snow-storm before that?

A. I could not swear very well the time of the last snow-storm.

Q. Tell as near as you can?

A. It may have been a week or more.

Q. You think it was more than three days?

A. I think it was.

Q. State how the ice lay on the walk?

A. It was very uneven, the way snow is when stepped upon, and there was one ridge where they had walked the most.

Q. On each side of that ridge how was it, soft or hard?

A. It was snow and ice.

Q. How deep was the snow that lay upon the walk?

A. Some parts of the snow was two feet, from that down to nothing. There were places where the walk was perfectly bare.

On cross-examination he testified:

Q. Whereabouts, with reference to the Lepin Hotel, was it two feet deep?

A. Where the platform and sidewalk came together, Here it was drifted up and swept off the platform.

Q. Do you have reference to where the walks come together? Immediately west of the hotel?

A. No, sir, the south-east corner of the hotel. The sidewalk in front of that is narrower, and it makes a corner.

Mr. Pierson, the proprietor of the hotel, testified as follows:

Q. This snow and ice you mention, what was the ice, compacted snow?

A. Yes, sir.

Q. How long had those hummocks of compacted snow been there?

A. I could not say. It was very icy all the way down, in places more so than others.

Q. State how long that condition of things had existed?

A. I don't know the dates when the snow fell. It was the date the snow fell—the snow fell in the night, and the people coming down town in the morning had made a beaten path. Of course we cleaned it off next to the house as best we could, but it left a ridge there. East, further along, we did not clean off. It was not cleaned off in front of the other lot.

Q. Was it as much as ten days or two weeks that it was on there?

A. It is possible.

A number of witnesses testified to substantially the same facts, and a clear preponderance of the testimony tends to show that the injury occurred on the sidewalk at a point not far from the east of the hotel, where the walk was obstructed by accumulations of snow and ice.

The sidewalk is shown to have been four feet and one inch in width, except immediately in front of the hotel, which stood back from the line of the lot six feet and nine inches. At this point the sidewalk extended to the hotel, being ten feet and ten inches in width. The testimony tends to show that the portion of the sidewalk between the hotel and the line of the lot had been constructed or paid for by the owner of the hotel, but was under the direction or control of the city—that it was in fact a part of the sidewalk, and was used as such.

The court instructed the jury:

"2. If you find the injury complained of occurred outside and off the streets and sidewalks of the city, you will find for the defendant."

In this we think the court erred. The entire sidewalk

was a part of the street. The six feet nine inches within the line of the lot, so far as appears, was dedicated to the public and accepted by the city in its behalf. A walk being laid there, was an invitation to every person passing along the street to use it at his pleasure. There were no distinguishing marks, nor was there a dividing line between what is claimed to be the sidewalk proper and this portion that extended to the building. The whole, therefore, is to be treated as a part of the sidewalk, and it was the duty of the city to keep it in a safe condition.

The court also instructed the jury:

"3. To warrant a verdict against the defendant you must find the defendant had actual notice of the obstruction, if any, which you must find was within the limits of the streets or sidewalks, which the defendant was liable to keep safe and in repair, as such defect, if any, you must find had existed and continued for a length of time sufficient by reasonable diligence for you to presume defendant had actual notice prior to the time of the injury complained of."

"4. If you find the injury complained of was caused by ice and snow—agents occasioned by what is called the act of God, the city, defendant, would not be liable until after actual notice or sufficient time had elapsed to presume notice, and the defendant had, with due diligence and ordinary care, time to remove said ice and snow, if any."

"5. The mere fact that the street or sidewalk was slippery from ice upon it, on which the plaintiff, in use of ordinary care, slipped and fell, would not render the defendant liable if the street or sidewalk was properly and well constructed, and there was no such accumulation of ice and snow, or either, as to constitute an obstruction and impediment to pedestrians safely along the same in use of ordinary care, and there was nothing in the construction or shape of the said street or sidewalk which oc-

casioned any special liability to the formation or accumulation of ice or snow upon said street or sidewalk."

Where the defect in a sidewalk has been occasioned by decay or other cause, the rule no doubt is that the city must have actual notice, or the defect have existed for such a length of time that notice will be presumed. Where, however, the obstruction is caused by falling snow, which has extended over the entire city or state, this is notice to the city authorities of the existence of snow on the sidewalks, and in case of a city of the second class, with ample power to clear the same, it is its duty to do so or cause the same to be done within a reasonable time, otherwise it will be liable for injury occasioned by its neglect.

The question whether the city was negligent in not removing the obstruction was one of fact, and should have been submitted to the jury.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

COBB, J., concurs.

REESE, CH. J., dissents from the first point, as stated in the syllabus.