CITY OF HASTINGS v. JEFFERSON H. FOXWORTHY.

FILED JUNE 22, 1895. No. 6152.

1. **Municipal Corporations:** DAMAGES: PRESENTATION OF CLAIM: TIME: VALIDITY OF REQUIREMENT. The provision of section 34, article 2, chapter 14, Compiled Statutes, that in order to maintain an action against a city of the second class

having more than 5,000 inhabitants, for injury or damage to person or property, the party complaining must file a statement in the office of the city clerk, within six months from the date of the injury, giving the circumstances of such injury and other information, is a reasonable exercise of legislative power, and the filing of such a statement is a condition precedent to maintaining an action for such injury, and compliance therewith must · be alleged and proved. *City of Lincoln v. Grant*, 38 Neb., 369, followed.

2. **Res Adjudicata:** REVIEW. An appellate court, on a second appeal of a case, will not ordinarily re-examine questions of law presented by the first appeal, but where the case was on the first appeal remanded generally for a new trial and the same questions are presented on the second trial, the appellate court is not bound to follow opinions on questions of law presented on the first appeal and may re-examine and reverse its rulings on such questions, and should do so when the opinion first expressed is manifestly incorrect.

3. ——— : ———. *Hiatt v. Brooks*, 17 Neb., 33, modified.

4. **Action Against Cities:** LIMITATIONS : DISABILITY OF PLAINTIFF. Where a statute requires a certain thing to be done within a time specified, as a condition precedent to maintaining an action, the disability of the plaintiff during a portion of the period allowed will not extend the time of performance, provided a reasonable time remain within the period after the disability is removed.

ERROR from the district court of Kearney county. Tried below before BEALL, J.

See opinion for reference to authorities.

*Tibbets, Morey & Ferris* and *A. H. Bowen,* for plaintiff in error.

*J. R. Webster, J. L. McPheely,* and *B. F. Smith, contra.*

IRVINE, C.

This was an action by Foxworthy against the city of Hastings to recover for personal injuries by him sustained through falling upon a sidewalk where it was alleged the

city had permitted ice and snow to accumulate and remain. The case has acquired a long history. In its early course the district court overruled a demurrer to one count of the answer, and a judgment of dismissal having been entered, the plaintiff brought the case to this court, where the judgment of the district court was reversed. (*Foxworthy v. City of Hastings*, 23 Neb., 772.) The case was remanded to the district court, a trial was had, resulting in a verdict for the defendant, and the case was again brought to this court and the judgment reversed for error in the instructions. (*Foxworthy v. City of Hastings*, 25 Neb., 133.) A second trial having resulted in another verdict for the defendant, Foxworthy again brought the case here, where it was for the third time reversed; this time for the insufficiency of the evidence. (*Foxworthy v. City of Hastings*, 31 Neb., 825.) After the cause had been the last time remanded, a change of venue was taken to Kearney county, where the case has been again tried, this trial resulting in a verdict and judgment for the plaintiff for $5,000. The city now brings the case here for review. Of the errors assigned we shall notice only two, which raise the same question. These are that the court erred in overruling the objection of the defendant to the introduction of any evidence on the ground that the petition does not state a cause of action; the other that the verdict is not sustained by sufficient evidence.

The city of Hastings has been, ever since the events complained of, a city of the second class having more than 5,000 inhabitants, and section 34, article 2, chapter 14, Compiled Statutes, providing for the government of such cities, is as follows: "All claims against the city must be presented in writing, with a full account of the items, verified by the oath of the claimant, or his agent, that the same is correct, reasonable, and just, and no claim (or demand) shall be audited or allowed unless presented and verified as provided for in this section; *Provided,* No costs shall be recovered against such city in any action brought against it

for any unliquidated claim, including claims for personal injuries sustained by reason of the negligence of such city, which has not been presented to the city council to be audited; nor upon claims allowed in part, unless the recovery shall be for a greater sum than the amount allowed, with the interest thereon ; *Provided further*, That all actions against such city for injury or damage to person or property hereafter sustained by reason of the negligence of such city must be brought within six months from the date of sustaining the same; and to maintain such action it shall be necessary that the party file in the office of the city clerk, within six months from the date of the injury or damage complained of, a statement giving full name and the time, place, nature, and circumstances of the injury or damage complained of, and the name or names of the witness or witnesses thereto." The case when first presented to this court called for a consideration of this section. The defendant had pleaded that the action was not brought within six months from the time when the plaintiff had sustained his injury. It was to this plea that the plaintiff demurred. This court held (23 Neb., 772) that that portion of the section we have quoted, requiring that actions shall be brought within six months, was invalid and that the general statute of limitations applied. The city's contention now is that notwithstanding that decision the last clause of the section is valid, and that no action can be maintained unless the plaintiff, within six months from the date of the injury, filed in the office of the city clerk a statement of the time, place, nature, and circumstances of the injury, and the names of the witnesses. The amended petition avers that the injury was sustained January 21, 1886, and that the statement was filed July 28, or more than six months thereafter. There are averred other facts by which it is sought to excuse the delay. This feature will be considered separately. The petition and proof both show that no statement was filed within the period required

by the statute, and it is in this respect that the city claims that the petition and proof are defective.

The first opinion in the case related solely to that portion of the section providing a special period of limitations; but in the opinion the following language was used: "Questions, no doubt, will arise as to the validity of the provision requiring notice of the names of the witnesses, etc., to be given to the city council at the time the claim for damages is filed. But that matter does not properly arise in this case. While it is proper to present the names of such witnesses to the city authorities, in order that the validity of the claim may be investigated, yet it is believed that the failure to do so will not defeat a recovery, although it may affect the question of costs." While by this language there is ventured an intimation that the action would lie notwithstanding the failure to file a statement, the court expressly states that the question was not involved in the record as then presented. Since the last hearing of the case in this court it has been decided that a provision almost identical in the charter of cities of the first class having more than 25,000 inhabitants is valid, and that the filing of the statement required is a condition precedent to maintaining the action and must be alleged and proved. (*City of Lincoln v. Grant*, 38 Neb., 369; *Dayton v. City of Lincoln*, 39 Neb., 74.) In *City of Lincoln v. Grant* there was cited on behalf of the contention that the statutory provision was not mandatory the language we have quoted from the first opinion in this case; and the court in the opinion in the Grant case observed that this language was a mere *dictum* and so intended. The opinion in the Grant case was concurred in by the author of the opinion in 23 Neb., so it is manifest that the court did not in the latter opinion undertake to decide the question. So far as any express decision or actual consideration of the question is concerned, it has never arisen in this case, and following the decision in *City of Lincoln v. Grant*, the ques-

tion must be solved in favor of the contention of the city, unless by implication it has formerly been otherwise resolved in this case, and unless, further, the court is bound by such implied decision, so far as this case is concerned, notwithstanding its deliberate judgment to the contrary in the Grant case.    The defendant in error contends that there has been such an implied decision, and that this court is so bound.    To this contention counsel address an argument of great technical force, supported by very respectable authority.

Referring to the decision in 23 Neb., it will be remembered that the case was there presented to reverse the overruling of a demurrer to the answer.    It is a familiar rule of pleading, repeatedly enforced by this court, that a demurrer brings up for review not only the pleading demurred to, but all prior pleadings, and judgment on the demurrer must go against that party who is guilty of the first defect. (*Bennet v. Hargus,* 1 Neb., 419; *Hower v. Aultman,* 27 Neb., 251.)    Regarding this rule it is, therefore, clear that the city on the first hearing could have invoked the aid of that clause of the statute we are now considering against the demurrer to its answer, and that a decision on the lines of the Grant case would have resulted in the affirmance of the judgment on the ground that the petition was defective for not pleading a compliance with the last clause of the section.    It may then be fairly said that this court, by sustaining the demurrer to the answer, impliedly held that the petition did state a cause of action, and that it was, therefore, not necessary to plead, and consequently not necessary to prove, a compliance with the provision we are considering.    So, again, on each of the other occasions when the case was before this court, similar considerations would have led to the affirmance of the judgments in favor of the city on the ground that notwithstanding any of the errors which in fact led to a reversal, the judgment was the only one which could have been ren-

dered under the pleadings and proof. We think, therefore, that the defendant in error has quite clearly established the proposition that the question under consideration, had it been presented, would have controlled any of the former decisions; and that the court may be said to have already three times impliedly decided the question now before us in favor of Foxworthy, although on no occasion was that question in fact considered or actually decided.

The argument having advanced thus far, the defendant in error invokes the application of a rule which has been frequently announced by appellate courts, that a ruling once made in a case by an appellate court, while it may be overruled in other cases, is binding both upon the inferior court and upon the appellate court itself in all subsequent proceedings in the original case, and that in such subsequent proceedings neither the lower court nor the court making the ruling can depart from such ruling. A ruling so made is said to become "the law of the case." As a preliminary to the discussion of the application of the rule to this case, it may be well to review the former decisions of this court and ascertain to what extent it has committed itself to the doctrine contended for.

In *Hiatt v. Brooks*, 17 Neb., 33, the court stated the rule in the syllabus as follows: "A previous ruling by the appellate court upon a point distinctly made may be only authority in other cases to be followed or affirmed, or to be modified or overruled, according to its intrinsic merits, but in the case in which it is made it is more than authority; it is a final adjudication, from the consequence of which the court cannot depart nor the parties relieve themselves." The opinion contains no discussion of the rule, but only a statement that the court would adhere to the views expressed in the former opinion, followed by the statement that it would be inadmissible to review the grounds of such opinion, now that the trial court has obeyed the order before made with the result logically following. No authori-

ties are cited in the opinion, but the statement of the rule
in the syllabus is followed by a citation of *"Phelan v. San
Francisco,* 20 Cal., 45, quoted in Wells' Res Adjudicata."
From this method of citation it would seem probable that
the court had not consulted the decision cited, but only the
text-book; and from the summary method in which the
opinion disposed of the question, it is evident that it was
not one considered very important to the disposition of the
case.

In *O'Donohue v. Hendrix,* 17 Neb., 287, the case had
already been before the court, and this language was used
in the opinion: "The first and third objections were con-
sidered on the former hearing, and decided against the
plaintiff. No motion for a rehearing was filed nor was
any objection made to the decision of the court. Those
questions, therefore, will not be again considered. (*Hiatt v.
Brooks,* 17 Neb., 33.)"

In *Leighton v. Stuart,* 19 Neb., 546, a quotation is made
from the former opinion in the same case, followed by this
language: "In *Hiatt v. Brooks,* 17 Neb., 33, it was held,
and I think correctly, that," etc., (quoting the syllabus in
*Hiatt v. Brooks*). The court then adds that there is no
doubt, independent of this principle, that the conclusions
of law already arrived at were correct. The rule in *Hiatt
v. Brooks* was invoked in support of the decision of ques-
tions of fact in *Lane v. Starkey,* 20 Neb., 586, and the
court there held that the rule must be applied only to the
decision of legal principles, but that it did not require the
following of former decisions on questions of fact.

In *Marion v. State,* 20 Neb., 233, there is no reference
to the doctrine in the syllabus, but certain conclusions
reached on a former appeal of the case were adhered to,
the following being the only reference to the subject in the
opinion: "We adhere to our former holdings upon this
part of the case, both upon the ground that we believe
them to be correct and for the further reason that having

been so decided in this case on its previous hearing, *Marion v. State, supra,* it has become the law of the case." (Citing *Hiatt v. Brooks* and *Leighton v. Stuart.*)

In *Chicago, B. & Q. R. Co. v. Hull,* 24 Neb., 740, the language of the syllabus in *Hiatt v. Brooks* is requoted in the syllabus. In the opinion the following is the only language addressed to the subject: "This point was distinctly presented in this case when it was first before this court, and distinctly decided. Under the well known rule of *stare decisis,* that decision remains the law of this case." It may be here remarked that in *Hiatt v. Brooks* the court refers the rule to the principle of *res adjudicata,* while in *Chicago, B. & Q. R. Co. v. Hull* it is referred to the doctrine of *stare decisis.*

In *Meyer v. Shamp,* 26 Neb., 729, the rule is stated in the syllabus as follows: "A judgment or ruling of this court in a case or point distinctly and finally made, will be held to be the law of the case in which made, throughout its course of litigation, without regard to the number of times it may be brought before the court, or to the intrinsic merits of such judgment or ruling." The court refers to *Hiatt v. Brooks* and several of the cases we have already cited, and says that the rule there stated "is believed to be the law."

The foregoing comprises, we believe, all that has ever been said by this court on the subject. Of these decisions, we have the following observations to make: In the first place, in each case, either by the language employed or by the adoption by citation of the language in *Hiatt v. Brooks,* the rule was limited to rulings formerly made on points distinctly presented for decision. Inasmuch as the plaintiff in error here, as we have seen, can invoke only an implied decision and not one on any point distinctly made on the former hearings, we do not think that any of the cases cited, by its terms, controls this case. A further observation is that notwithstanding the repeated statements of the

rule, there has never been in any case a discussion of its correctness, or a reason advanced for its application. In the third place, it twice at least appears from the opinions that notwithstanding the rule the court had reconsidered the questions presented by the former appeal, and believed the former ruling to be correct, and in no case has any doubt been expressed as to the correctness of the former decision. In other words, the court has never yet been confronted with the problem which we are now facing, that of overruling a former decision in the same case, or else abiding by it because of the doctrine stated, although such former ruling was manifestly wrong and opposed to the later decisions of the court. Had the court on former occasions entertained any doubt of the correctness of the ruling on the first appeal, it can hardly be that such doubt would have been thrust aside without a consideration of the reason for the rule requiring it to be thrust aside, and the statement of some reason in support of such rule. In a sense, therefore, all the statements which we have quoted may be said to be *obiter*, and we feel not only at liberty, but required, now when the application of the rule for the first time would demand adherence to a decision manifestly wrong, to carefully examine the subject, even though such examination may lead to a modification of a rule of practice which has obtained for many years. In this discussion, before examining the question upon principle, we shall endeavor to examine it in the light of the authorities and ascertain how the doctrine arose and to what extent it has received the support of other courts. In *Hiatt v. Brooks* it was expressly adopted from *Phelan v. San Francisco*, 20 Cal., 45, and in all subsequent cases it has been based solely upon the authority of *Hiatt v. Brooks*. It may be said, then, that we have adopted the doctrine from California, and we shall look first at the decisions of that state.

The case in which we first find the rule announced in

California is that of *Dewey v. Gray,* 2 Cal., 374. It would seem from the report that the case had once before been before the supreme court, but we have been unable to find the first decision reported. The action was one for rent, to which it was pleaded that the landlord had re-entered before the expiration of the lease and relet the premises to another. The court says that it before held that the re-entry and reletting discharged the tenant from his covenant, with the exception that the landlord was still entitled to recover any rent which had accrued at the time of the re-entry. Then follows this remarkable language: "The latter portion of that decision is in abrogation of one of the plainest principles of law, and if this case was a new one I would not hesitate to overrule it; but legal rules deprive us of the power to do so. The decision having been made in this case it has become the law of the case, and is not now the subject of revision." The sole authority cited in support of this radical statement is *Washington Bridge Co. v. Stewart,* 3 How. [U. S.], 413, a case which we shall show hereafter is not in point, and depends upon entirely different principles, which the California court, as well as others, seems to have overlooked. Hardly less remarkable than the language here used is the fact that it was manifestly *obiter.* The jury had found a verdict for the plaintiff for the full amount of the rent claimed. Under the instructions this involved a finding that there had been no re-entry, so it was entirely immaterial to the decision of the case whether in case of a re-entry recovery could be had for rent accrued to that time. But behold to what length a too rigid adherence to the doctrine of *stare decisis* may lead us.

In *Clary v. Hoagland,* 6 Cal., 685, the action was one of forcible entry, and had begun in the county court where judgment had gone in favor of the plaintiff. The supreme court reversed the judgment and remanded the cause for a new trial. The case was again presented to the supreme

court on *certiorari* to review proceedings wherein the county court had by *mandamus* commanded its clerk to issue a writ on the original judgment. A motion to dismiss the writ was denied, and a rehearing was allowed on the question as to whether the former judgment was conclusive on the parties, the supreme court having in the meantime determined that in such case the district court had no appellate jurisdiction, and the case having been first brought to the supreme court through the district court by an attempted appeal. Here, it will be observed, the court was called upon to say whether or not in subsequent proceedings in a case the parties and the court were bound by a decision announced in an appeal over which the supreme court had no jurisdiction. The court again cited *Washington Bridge Co. v. Stewart*, and carried the doctrine of *Dewey v. Gray* to its logical conclusion, holding that although it had no jurisdiction in such cases, still, having in this particular case entertained jurisdiction, the parties were bound by the result. Not only this, the question of jurisdiction was not raised on the former hearing, but the court said that it must always be implied that a court at the very first decides the question of its jurisdiction, and having entertained the case on its merits, the question of jurisdiction must be considered as having been decided, although not in fact raised or considered.

In *Davidson v. Dallas*, 15 Cal., 75, the doctrine was again stated very nearly in the language in which it appears in some of the Nebraska cases. *Dewey v. Gray* is quoted at length, and, in addition thereto, there are cited *Washington Bridge Co. v. Stewart* and several other cases in the supreme court of the United States; also, *Hosack v. Rogers*, 25 Wend. [N. Y.], 313; *Stiver v. Stiver*, 3 O., 18; *Booth v. Commonwealth*, 7 Met. [Mass.], 286, and *Russell v. La Roque*, 13 Ala., 151. Only one of these cases, we shall undertake to show, was in point. The case we are considering is, however, noteworthy as being one of a very

few cases in which the court has attempted to give a reason for such a rule of law; and the reason given is that after a mandate the appellate court loses jurisdiction over the case, and that questions decided leading to the judgment and mandate constitute a final adjudication. This reasoning is undoubtedly sound as applied to a certain class of mandates, as is illustrated in a class of cases which the California court has considered as supporting its doctrine; but we cannot see how it is applicable to a mandate reversing a case and remanding it for a new trial. In the latter case the whole case is tried anew, and nothing is settled by the first appeal beyond the fact that the first trial was erroneous, and that all the issues must be tried again.

The case of *Phelan v. San Francisco*, 20 Cal., 39, being the only case which our court has cited in support of the doctrine, states it in the language of the syllabus in *Hiatt v. Brooks*, citing *Davidson v. Dallas*; but there is no discussion of the doctrine. In the same volume, however, appears the case of *Leese v. Clark*, 20 Cal., 388, where Judge Field delivered the opinion of the court and again stated the doctrine. He says that the court entertained no doubt of the correctness of the former decision, then cites *Dewey v. Gray* and the other California cases, and three of the cases cited in *Davidson v. Dallas*. The reason is stated to be that the court by its mandate abandoned jurisdiction of the first appeal, and lost the power to modify its judgment therein expressed.

A number of California cases later than the 20th might be cited supporting the contention of Foxworthy. It will not be necessary to review them. It is sufficient to say that the California court has, by repeated decisions, adhered to that doctrine, and that all these cases fairly support Foxworthy's contention. Inasmuch as our cases, if adhered to, based as they are on the authority of California, would require a decision here in favor of Foxworthy, we have reviewed the cases down to the 20th, at which point

our court adopted their doctrine, for the purpose of show-ing that they originated in California in an *obiter dictum*, and that California traces the doctrine to certain cases in the supreme court of the United States and elsewhere, which do not support the doctrine; and for the further reason of showing that the California court has given a reason for its decisions applicable to those cases which it cites and furnishing a sufficient ground for those decisions, but which does not in any way apply to the cases decided in California or to such a case as the one now before us.

The California doctrine is not without support in the de-cisions of some other states.

In *Russell v. La Roque*, 13 Ala., 149, the opinion opens as follows: "This cause has been tried before this court, and the rules applied to it then is the law of it now." In better English, but just as bluntly, the same court said in *Thomason v. Dill*, 34 Ala., 175, that propositions laid down on a former appeal "are the law of this case and must not be lost sight of." In neither case was any doubt expressed as to the correctness of the former decision, and there is no discussion of the rule announced.

In *Rector v. Danley*, 14 Ark., 304, the opinion opens with a statement that it is a settled doctrine that a decision made when the cause was in the court before is the law of the case, and nothing then determined can be reviewed. Here, again, no authority is cited and no reason is given.

Precisely of the same nature is the case of *Mynning v. Detroit, L. & N. R. Co.*, 35 N. E. Rep. [Mich.], 811. The doctrine has also been adopted in Indiana, the rule being stated there also unaided by argument or authority. (*Kress v. State*, 65 Ind., 106; *Pittsburg, C. & St. L. R. Co. v. Hixon*, 110 Ind., 225; *Continental Life Ins. Co. v. Houser*, 111 Ind., 266.)

The doctrine also receives apparent support in the cases of *Hill v. Hoover*, 9 Wis., 12, and *Pierce v. Kneeland*, 9 Wis., 19; although both of those cases might have been solved
48

under a strict and correct application of the doctrine of res adjudicata. Of the same character is the case of *Hopkins v. Hopkins*, 40 Wis., 462. In none of these cases was the first reversal general, but the cause was remanded with certain features finally adjudicated, so that they could not again properly arise in the further proceedings in the case.

In *Stacey v. Vermont Central R. Co.*, 32 Vt., 551, the court, while intimating some doubt as to the correctness of the doctrine, states that it has been so long established that it will not be departed from, but also states the reason for it to be, in the first place, that the former decision has the same weight as authority as a decision in another case, and, in the second place, that it is an adjudication between the parties. The latter reason is the only one which could be advanced for holding the decision conclusive upon the court, and the Vermont court says that it is not conclusive as a matter of law, because the court may revise and reverse it. Thus, this case is, after all, ambiguous, leaving the former decision in scarcely any stronger position than a decision of the same question between other parties.

In *Semple v. Anderson*, 4 Gil., 546, the rule seems to be for the first time in Illinois announced, and the court cites in support of its conclusion the cases in the supreme court of the United States cited by the California court, and 7 Met. [Mass.], 286. As we have already stated, we shall show that these cases are based upon a different principle, which is illustrated by the case of *Hollowbush v. McConnel*, 12 Ill., 203. In that case the opinion was by Judge Trumbull. On the former appeal the cause had been remanded for certain specified proceedings, not remanded for new trial generally. In the inferior court an effort was made to relitigate the questions which had been finally determined by the first appeal, and which were not within the scope of the mandate. The court properly held that these issues were res adjudicata, citing *Washington Bridge Co. v. Stewart*, 3

How. [U. S.], 413, which is in point on this proposition.
Unfortunately, however, in *Cook v. Norton*, 61 Ill., 285,.
the court, on the sole authority of *Hollowbush v. McCon-
nel*, applied the doctrine to a case remanded generally for
a new trial, losing sight of the distinction between a final
order adjudicating an issue and an order remanding a case
for a new trial throughout, leaving all issues still undeter-
mined.    Later Illinois cases have followed the doctrine of
*Cook v. Norton*, the question not seeming to have ever
again been examined on its merits.

We have now referred to the decisions of all states
which in our opinion lend either actual or apparent support
to the doctrine of the California court.    We have seen that
in every case the rule first originated in a bald *dictum* with-
out the support of reason or argument, or else it was based
on the authority of certain cases in the supreme court of
the United States, or of New York, Massachusetts, and
Ohio.    The New York case cited is *Hosack v. Rogers*, 25
Wend., 313.    This was a case before the court for the correc-
tion of errors.    A doctrine somewhat akin to that here con-
tended for is stated in the syllabus prepared by the reporter.
There is only one opinion supporting that view, three ad-
verse thereto.    The vote of the court was eleven to eight
for affirmance, and it nowhere appears that that vote was
because a majority of the court agreed with the one mem-
ber who advanced the " law of the case" doctrine, except.
by a note of the reporter to the effect that it was "generally
understood" that but for the principle of *stare decisis* the
judgment would have been reversed.    The case of *Booth.
v. Commonwealth*, 7 Met. [Mass.], 285, often cited in sup-
port of the doctrine, was where a judgment had been af-
firmed and the plaintiff in error undertook to sue out a
second writ of error from the same judgment.    The court,.
of course, held that this could not be done, but we cannot
see how by any stretch of the imagination the rule here
contended for can be discovered as involved in that ques-

tion. The case of *Stiver v. Stiver*, 3 O., 19, is also cited; but that case merely held that a bill in chancery would not lie to correct a judicial error. *Pollock v. Cohen*, 32 O. St., 514, was precisely like *Booth v. Commonwealth*. The cases most frequently cited as supporting the doctrine are, however, those in the supreme court of the United States, and we shall now proceed to their examination.

The first case in point of time is *Himely v. Rose*, 5 Cranch [U. S.], 313. This was an admiralty case. There had been an appeal in which the sentence was reversed with a direction as to what the sentence should be, and an order remanding the case for the entry of a sentence in accordance with the opinion. For the purpose of entering such a sentence the circuit court referred the case to auditors, and there was an appeal from the auditors' report. In arguing this appeal, Mr. Martin was about to open a question covered by the first appeal, when Chief Justice Marshall remarked: "Nothing is before this court but what is subsequent to the mandate." It will be observed that the chief justice in effect stated that everything prior to the mandate had been adjudicated, and this was undoubtedly correct. The mandate did not send the case back for a new trial, or for a new hearing, but with specific instructions as to further proceedings. The propriety of such further proceedings was, therefore, finally adjudicated and not involved in the second appeal.

In *Skillern v. May*, 6 Cranch [U. S.], 267, a cause had come to the supreme court from the circuit court for the district of Kentucky. The decree of that court had been reversed with directions to make partition. When the cause came up before the circuit court upon the mandate, it was discovered that the jurisdiction of the circuit court was not pleaded and the case again came to the supreme court on a certificate of division as to whether the circuit court should then dismiss the cause for want of jurisdiction. The supreme court wrote no opinion, but merely entered an

order that it was the duty of the circuit court to obey the mandate. This case certainly involved no question of the power of the supreme court to change its conclusion. It merely repeated to the circuit court what the mandate had already directed.

The next case is the famous case of *Martin v. Hunter*, 1 Wheat., 304. The case had been brought to the supreme court of the United States on a writ of error to the court of appeals of Virginia. The supreme court had reversed the case and remanded it to the court of appeals, which refused to execute the mandate on the ground that the supreme court of the United States had no jurisdiction. A writ of error was then taken to review the refusal of the court of appeals to obey the mandate, and it was argued that if the supreme court had no jurisdiction of the first writ, all subsequent proceedings were void. To this the supreme court answered that the former record was not before it, and that the second writ of error did not draw in question the propriety of the first judgment. In *Hunter v. Martin*, 4 Munf. [Va.], 1, the first mandate is set out at length, from which it appears that the supreme court remanded the case with directions to the court of appeals to enter a judgment for Martin. It will be observed that the first judgment of the supreme court was a final one upon the merits, constituting an adjudication of title. The cause was not remanded for a new trial, and no question had been left open.

In the case of *The "Santa Maria,"* 10 Wheat. [U. S.], 431, the supreme court on the first appeal had entered a decree and issued a mandate to carry that decree into effect. Pending the appeal a claim had been interposed for insurance and other charges on the boat. On the second appeal this claim was resisted, on the ground that the petitioner was a *mala fide* claimant. The court remarked that no question could be raised which had been before the court on the first appeal, but that all new questions were opened

for determination and the whole record before the court for that purpose. This was another case of final adjudication by the first appeal. The matters there involved had not been reopened for a new hearing. *Sibbald v. United States,* 12 Pet. [U. S.], 488, was a similar case.

* The case most frequently cited by the courts which have adopted the doctrine contended for by Foxworthy is *Washington Bridge Co. v. Stewart,* 3 How. [U. S.], 413. In that case an assessment had been made on the stockholders of the bridge company. Stewart and others who were stockholders did not pay, and the company undertook to forfeit their stock. Congress passed an act to purchase the bridge, whereupon these stockholders filed a bill in the circuit court for participation in the purchase money. The court entered a decree holding that the plaintiffs were still stockholders, but that before division of the purchase money certain other stockholders should be reimbursed from that fund for advances which they had made. The decree also ordered a reference to an auditor to state an account in accordance with the decree. An appeal was immediately taken from this decree and the decree affirmed by the supreme court. The auditor then proceeded to state the account, after which a final decree was entered. An appeal was taken from this decree by the bridge company, which had also been the appellant before. The company undertook to question the propriety of the first decree on the ground that it was interlocutory merely, and therefore not appealable, and that the bridge company was not estopped by the decision on the first appeal. The supreme court held that the bridge company having appealed from the interlocutory decree and no exception having been taken to the jurisdiction, and the case having been decided on its merits, the parties were now estopped from alleging the want of jurisdiction, and that the first decree affirming the interlocutory decree of the circuit court constituted an adjudication of all matters therein involved. This case was

like all the others.   The refusal of the court on the second appeal to reconsider the questions was based not on any want of power to do so after a new trial in the same case of the same issues, but was based on the fact that the first appeal had led to a judgment in the supreme court, finally adjudicating the issues, and leaving none of those already disposed of to be retried after the mandate.

The foregoing are the cases usually cited by the advocates of the California rule.   Many others of like character in the supreme court of the United States might be cited, but that court has never laid down the California rule and has never decided a case which lends any support to it.   We need not review the decisions of the courts of the other states.   We have examined very many of them. We find many cases like those in the supreme court of the United States, and, indeed, this court has applied the principle therein involved.   (*Younkin v. Younkin*, 44 Neb., 729.)   On the other hand, many courts have, without question, on a second appeal after a mandate reversing a case for a new trial, reconsidered questions presented on the second trial which had also been presented on the first. The distinction which we have endeavored to point out, a distinction ruling the decisions of the supreme court of the United States, and one which the California court failed to observe, was distinctly recognized in *Adams County v. Burlington & M. R. R. Co.*, 55 Ia., 94.   It was there urged that a decision did not become *res adjudicata* so long as the case remained pending.   The court said: "Whatever force there might be in this position in an action at law where the right to introduce new evidence after verdict involves the retrial of the whole case, we think it cannot be maintained in a case like this."   On a rehearing the same result was reached upon the ground that when the cause was first reversed it was remanded for a single purpose; for all other purposes there was held to have been an adjudication. In *Davis v. Curtis*, 70 Ia., 398, general language was used

to the effect that a ruling once made became the law of the case. *Adams County v. Burlington & M. R. R. Co.* was the only authority cited, and *Davis v. Curtis* was a case like that, the first appeal having determined the rights sought to be relitigated. On this branch of the case we shall refer to only three other authorities; these are *Bane v. Wick*, 6 O. St., 13, *Bell v. Lamprey*, 58 N. H., 124, and *Frankland v. Cassaday*, 62 Tex., 418. The doctrine of these cases is that conclusions reached on questions of law on the first appeal will ordinarily not be examined on a second appeal, but that in exceptional cases, when the court is very clearly satisfied that its former opinion was erroneous, this rule will not be applied.

In the discussion of the authorities we have gone far beyond the proper limits of most opinions. We have done so because we deem the question one of very great importance, and have felt the necessity of a close examination both upon principle and upon authority. The general course of the review has been to trace the doctrine back. Adopting now the contrary course, it will be observed that its history is this: The supreme court of the United States and other courts having once entered judgments or decrees finally adjudicating certain issues, decided very properly that on a second appeal nothing so adjudicated could be relitigated. Other courts declined to permit a party after an unsuccessful appeal to prosecute a second appeal from the same judgment. A few courts, notably California, failing to draw the distinction between a judgment upon the merits and a *venire de novo*, adopted these cases as authority for the proposition that where a new trial had been awarded the court could not on a second appeal re-examine any questions of law decided on the first. Having gone so far they were driven to the further conclusion that the principle applies to every question involved in the first appeal whether in fact examined or not. Then in a very few instances after this doctrine had been established, but never

in a case of first impression, some reasons have been given in its support. That usually given is that the first opinion is an adjudication. It needs but a moment's reflection to show that there is no adjudication by the expression of an opinion on a point of law where no judgment is entered in accordance with that opinion but the cause is remanded generally. The only thing adjudicated is that there was error in the record, and that the whole case should be re-litigated. To apply the rules of *res adjudicata* to such a case would require a further holding that where a court has overruled a demurrer it may not afterwards on the trial dismiss the case because no cause of action is stated, or, having granted a temporary injunction, that it may not dissolve that injunction if it becomes satisfied that it was improvidently granted. Another reason given is that there must be an end to litigation. This is a salutary maxim, but to say that a court may not correct its own mistakes for this reason is to push it to an absurd conclusion. A third reason, somewhere given, is that on a second appeal the court only reviews the record for error on the second trial; that it is the duty of the trial judge to follow the opinion of the appellate court, although he may think it is erroneous, and technically he never errs when he does so. It is true that it is the duty of the trial judge to follow the directions of the appellate court, but when the case comes again before the appellate court, the question is not did the trial judge proceed according to its former opinion, but were his rulings correct in law. To enforce erroneous rulings, simply because the appellate court had directed the error, would be to pervert the law and sacrifice justice to the technicalities of practice. That the rule is not well founded in principle may be seen by the confusion of the courts in their efforts to base it upon a known principle. Some courts trace it to the principle of *res adjudicata*, some to that of *stare decisis*, and some, evidently realizing that it falls within neither principle, fall back upon the indefi-

nite term "the law of the case," as if it were possible under
our system of jurisprudence that there should be one law
for one case and a different law for other cases entirely simi-
lar thereto.    It has never been doubted that an appellate
court is not bound blindly to follow precedent.    A rule of
law once announced affords a guide for similar cases, and
will ordinarily control their decision; but having an-
nounced a rule, when another case arises presenting the
same question, if the court is satisfied that its former opin-
ion was wrong, it may, and frequently does, overrule it.
The limitations resting upon courts in this respect are
usually stated to be, first, that a former decision will not be
overruled when it has become a rule of property; and sec-
ondly, that it will be followed although erroneous, where
more mischief will result from overruling than from follow-
ing it.    This is as far as the doctrine of *stare decisis* should
go.    When, however, a decision in one case is overruled in
another, there is no remedy for the defeated party in the first
case.    His rights have been determined, and a decision over-
ruling a former opinion in a different case amounts always
to an admission by the court that it has subjected the unsuc-
cessful party in the first case to an injustice which can never
be remedied.    Notwithstanding this, subject to the limita-
tions we have stated, courts do overrule such opinions.
Why should the rule be more stringent when the same
case is up for review, the erroneous judgment still unexe-
cuted, the parties before the court, and the case in such a
situation that by the correction of the error no injustice will
be done, beyond, perhaps, the creation of additional costs?
If the doctrine contended for is to prevail here, then it fol-
lows that the only instance in which the court is not per-
mitted to correct its mistakes, or refuses to do so, is also the
only instance where the mistake can be corrected without
injustice.    Take the case before us.    The court in the Grant
case decided in effect that its former decisions in this case
should have been in favor of the city instead of Fox-

worthy. In subsequent cases, by reason of the decision in the Grant case, the city would prevail under the same state of facts; but if the former decisions in this case are conclusive upon the court the rule will be different for the city of Hastings and for Mr. Foxworthy in this one case than it is for all others and in other cases; and if so, what is to be done with that part of the fourteenth amendment to the federal constitution which forbids any state to deny to any person the equal protection of the laws? A court has no legislative power. Its duty is to declare what the law is, not to make law. To hold that it is bound to follow in a given case an erroneous decision formerly rendered in the same case would be to hold that, although the court believes the law to be otherwise, it will make a special law for the particular parties and the particular case before it, contrary to the general law—to substitute what it is pleased to call "the law of the case" for the law of the land, for the law which every member of the court is sworn to administer. To do so it must not only legislate, but legislate specially in a manner which our constitution forbids to the legislative body itself.

We conclude that the principles governing the case are these: The cause having been remanded generally, there was no adjudication of any rights between the parties; that the record presents the question upon this trial as well as upon the others, and that it is within the power of the court to re-examine its former decisions and apply the law correctly. We think that ordinarily the court is justified in refusing to re-examine questions of law once passed upon, and that it is only where it clearly appears that the former decision was erroneous that this should be done. It is, however, now clearly established that the former opinions in this case were erroneous and the court should correct the error. In the amended petition the averment appears that the plaintiff was confined to his bed and house for more than ten weeks, and was wholly incapacitated,

mentally and physically, to do any business or transact any affairs until the first day of May thereafter. On the trial a witness testified that for six or eight weeks Mr. Foxworthy suffered intense pain, and that for a month or six weeks he was insane through pain. It will be remembered that the injury was sustained January 21 and the statement was filed with the city council July 28. Do the facts so pleaded and proved excuse the delay? We think not. The filing of the statement was a condition precedent to the maintenance of the action. It was not in the nature of a limitation, and the existence of a disability preventing plaintiff from filing a claim would not extend the time for filing it for the statutory period after the disability was removed. We think the uniform line of authority on this subject is that the condition must still be performed within the time specified, provided a reasonable time after the removal of the disabilities remain for that purpose. It has been so held even in the case of a limitation by contract. (*Steel v. Phenix Ins. Co.*, 47 Fed. Rep., 863; *Blanks v. Hibernia Ins. Co.*, 36 La. Ann., 599.) Giving the utmost possible effect to the pleadings and evidence in regard to Mr. Foxworthy's disability, there remained after its removal several months within which the statement might have been filed.

REVERSED AND REMANDED.