## WILLIAM BARR v. FRANK W. LITTLE.

FILED APRIL 8, 1898.  No. 7968.

**Vendor and Vendee:** CONSTRUCTION OF CONTRACT: RESCISSION.  A provision in a contract for the sale and exchange of lands, set out in full in the opinion, construed to be a personal covenant and not a condition, and so not entitling the vendee to rescind on account of its breach.

ERROR from the district court of Lancaster county. Tried below before HALL, J.  *Reversed.*

*G. M. Lambertson* and *F. M. Hall*, for plaintiff in error.

*William G. Clark, contra.*

IRVINE, C.

This action was brought by Little against Barr for the purpose of enforcing the rescission of a contract whereby Barr had agreed to convey to Little certain property in Lincoln, and to require the reconveyance by Barr to Little of land conveyed, and the repayment of money paid in part consideration.  To Barr's answer Little interposed a general demurrer, which was sustained, and Barr electing to stand on his answer, a decree was entered in favor of Little.  Barr brings the case here by petition in error.

By a familiar rule of pleading the demurrer to the answer searches the whole record, and judgment thereon should go against that party whose pleading was first defective in substance.  (*Bennett v. Hargus,* 1 Neb. 419; *Hower v. Aultman,* 27 Neb. 251; *Oakley v. Valley County,* 40 Neb. 900; *City of Hastings v. Foxworthy,* 45 Neb. 676; *Hawthorne v. State,* 45 Neb. 871.)  The sufficiency of the petition is the first question thus presented.

The petition alleges that Barr was the owner of lot 5, in block 58, in the city of Lincoln, said lot having a three-story brick building thereon.  One Lamaster was the owner of an adjoining lot, having a similar building

thereon.   There existed between Barr and Lamaster a contract whereby the two buildings were erected with a common central hallway for the use of occupants of both buildings, and whereby a single heating apparatus was made to do service for both.   Such contract greatly enhanced the value of Barr's property.   Its benefits ran with the land.   February 18, 1893, the plaintiff and defendant entered into a contract in writing whereby Barr sold this property to Little at an agreed price of $20,700; $1,000 then paid, $19,700 to be paid on or before April 1, 1893, and, as the remainder of the price, Little agreed to convey to Barr a number of lots in Sabin Hill, in Lancaster county.   The petition then alleges in detail, by averments in its body and by transcripts attached as exhibits, certain legal proceedings then in progress between Barr and Lamaster.   These proceedings are evidently those reviewed by this court in the case of *Barr v. Lamaster*, 48 Neb. 114.   The petition pleads the course of these proceedings as far as the decree in the district court. For the sake of brevity we refer to the opinion in the case cited for a detailed statement thereof.   Suffice it here to say that the suit was brought by Barr to terminate the contract between him and Lamaster.   Lamaster by cross-petition sought the same result, but by different means. Barr dismissed his petition and the case was tried June 20, 1893, on Lamaster's cross-petition.   July 1, 1893 a decree was rendered in effect terminating the contract and ordering a sort of involuntary party wall to be erected under direction of the court.   Little alleges that he was ignorant of these proceedings when he contracted to buy the Barr property, but having learned thereof, he procured his contract to be modified June 29, 1893, by the following instrument:

"*William Barr, Esq., City:*   I will deed you the property in Sabin Hill Addition mentioned in our agreement, and will on September 1, 1893, pay you in cash $3,500, if you will at that time deed to me lot 5, block 58, Lincoln (with the three-story brick building thereon, which I under-

stand is located wholly on said lot 5), free and clear of in-cumbrance, taking back from me a first mortgage for $15,700, due in three years, at seven per cent interest, provided your suit against Lamaster is dismissed, the de-cree therein vacated, and Lamaster's cross-bill is dis-missed.

"Yours truly, F. W. LITTLE.

"I accept above proposition and have received deed to Sabin Hill property thereunder, and I guaranty the dis-missal, without decree, of Lamaster's cross-petition and of my suit against him. WM. BARR."

The plaintiff alleges that he paid $500 more on the pur-chase price, and at the date of the latter agreement, con-veyed to Barr the Sabin Hill property. Barr did not pro-cure the dismissal of the Lamaster case, but, on the contrary, it at once went to decree, and thereby the bene-fits of the hallway and heating contract were lost. Neither fraud nor mistake is alleged. If Little is entitled to a rescission, it is solely because Barr failed on his part to perform, and the failure, if there was one, was in not procuring the dismissal of the Lamaster suit. Taking the two agreements together, it appears that Barr was not obligated to convey except on Little's paying $3,500 and giving a mortgage for the remainder on September 1, 1893, or at such time and on such terms thereafter as a court of equity would regard proper. Little does not plead a tender or a willingness to perform, so he cannot rescind unless Barr's breach of the contract had rendered it unnecessary for him to proceed. It follows that the crucial question is whether the termination of the La-master litigation was a condition on which the perform-ance of the contract depended, or whether, on the other hand, it was a collateral promise, affording a remedy in damages only. Two facts tend somewhat to characterize the stipulation in that behalf as a condition. The first of these is the use by Little in his proposition of June 29 of the word "provided" in introducing that subject; the other is the requirement that the Barr property should be

conveyed "free and clear of incumbrance." The force of the word "provided" is limited by the other terms of the proposition and by the form of Barr's acceptance. While the pending suit could hardly be called in itself an incumbrance, it threatened to charge the property with a party wall, which is, in a broad sense, an incumbrance. But this covenant against incumbrances could not have referred to such an incumbrance as the party wall. The very ground of plaintiff's case is that the Lamaster case threatened the continuance of the contract for reciprocal easements. Little did not expect or desire that the property should be conveyed free or clear of these easements, yet they were incumbrances of the same character as the party wall. All other circumstances point to a personal promise and not a condition. Any inference from the words used in Little's proposition is rebutted by the fact that Barr's acceptance was not in those terms. He, in accepting, merely "guarantied"—i. e., warranted—the dismissal of the case. If the word "provided," in the sense of a condition, had been an essential of the proposal, then the proposal was not accepted, but met with a counter proposal substituting a warranty. But, going behind the strict meaning of the words employed, we reach the same conclusion from a construction of the whole contract in the light of the circumstances. The Lamaster case had been tried some days before the agreement of June 29 was made. It was then under advisement and a decree might be any day rendered. The time when there could be any great probability of an amicable adjustment was past. The parties actually contemplated that such an adjustment would not be reached, at least before a decision, because Little's proposal was that the decree should be vacated. This was something which must take place in the future. Little at once conveyed the Sabin Hill property to Barr. If the dismissal of the Lamaster case was a condition precedent to the exchange, he would not have done so. If it was a condition subsequent, it would have appeared in the contract or in

the deed. This contemporaneous practical construction placed upon the contract by the parties themselves is of the utmost significance. Barr had already dismissed his petition. Little knew that a decree would probably be rendered on the cross-petition. He knew that in that case the only way of procuring a vacation of such decree, except by Lamaster's consent, would be through appellate proceedings, and that such proceedings would require time extending long beyond that fixed for completing the transfers and making the final payment. We think it quite evident that the parties contemplated a consummation of the contract on the terms stated, regardless of the result of the Lamaster case, and that Little relied on Barr's promise, equivalent to one that he should do all things possible to dispose of the case without affirmative decree, and to answer in damages if he should fail.

REVERSED AND REMANDED.