CITY OF OMAHA V. KATHERINE L. LEWIS.

FILED JUNE 8, 1905. No. 13,827.

The evidence examined, and *held* sufficient to justify the submission of the case to the jury.

ERROR to the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*John P. Breen, C. C. Wright* and *W. H. Herdman,* for plaintiff in error.

*·A. N. Ferguson* and *Smyth & Smith, contra.*

JACKSON, C.

This is a proceeding in error instituted by the city of Omaha in this court for the purpose of reversing a judgment of the district court for Douglas county in favor of the defendant in error against the city of Omaha on account of the personal injury which the plaintiff in the court below claimed to have sustained by reason of the dangerous condition of a sidewalk in that city. For convenience the parties will hereafter be designated as plaintiff and defendant, as they were designated in the court below.

The only question discussed by counsel is as to the sufficiency of the evidence upon the question of the dan-

gerous condition of the walk to sustain the verdict in plaintiff's favor. The plaintiff testified that she resided on Sherman avenue, some distance south of the place where the injury was sustained; that on the afternoon of January 10, 1903, she left her home, and upon her return came down Sherman avenue from the north; that during her absence there was a light fall of snow; she started home about five o'clock P. M., and that just north of Madison avenue she fell. In response to a question requiring her to state to the jury what the accident was, and how it took place, she said: "Well, I was walking along, and the walks were all right; of course, there was just a little light snow—hardly enough to cover it—it just probably did—I was walking along, and I hadn't taken but a few steps, I guess, on the ice when I slipped; I was going this way and I slipped this way and fell on my right wrist. Q. When did you first encounter any ice on the sidewalk? A. Well, I had only taken a few steps on the ice when I fell. Q. Whereabouts on Sherman avenue did you first find the ice? A. That was the first, north of Madison avenue. Q. How far had you proceeded on the ice when you fell? A. Just a short distance, quite a short distance. Q. About how far? A. Oh, I had only taken a few steps. Q. How long prior to this time had you passed over Sherman avenue? A. I hadn't been up there for weeks. Q. Well, how many weeks? A. Oh, probably I hadn't been that far on Sherman avenue—I had been up Sherman avenue, but not so far as that; probably I hadn't been over there since before Christmas, up past that place. Q. What knowledge did you have at that time of the condition of this walk at the point where you received this fall? A. Do you mean before I fell? Q. Yes. A. I didn't know anything about it. Q. Explain to the jury, if you can, how you came to fall, if you know. A. Why, I don't know, I just slipped and fell. I don't know how I came to fall. Q. What was the result of this fall? A. I broke my wrist. Q. Which one? A. The right one. Q. You fell to the right? A. Yes, sir. She also testified that she was unable

to get up, and called to a young man who had just passed her, and that he assisted her to his home. Frank Thompsett, who assisted the plaintiff to arise and to the home of his parents, testified at the trial that Sherman avenue was the main street in that part of the city; he described the condition of the sidewalk where the plaintiff fell, as follows: The condition of the walk was that it was rough, and it was full of dent holes—foot marks—and they run from an inch to four inches deep, those gulleys in and out, and down, and rough and uneven; that the ice wasn't so thick near the outside of the walk, but that farther in it was about four inches deep; that it was rough and full of holes; some of the bumps were four inches in height; that this condition continued for about 100 feet or more north of Madison avenue; that the sidewalk along Sherman avenue north and south of this place had been cleaned off; that he passed the place twice a day during the latter part of December and January; that the walk had been in the condition described for at least a month, ever since the snow had fallen in the winter. Charles Lewis, a son of the plaintiff, visited the spot where the injury was sustained on the following morning; he described the condition as being rough where it had been tramped—looked like a cow yard; tramped all over and frozen there; snow and ice that is packed down; had been walked over and left ridged; was rough and uneven, just like it would be any place where it had been allowed to remain for a long time and walked over; it was rough; probably higher in the middle and lower at the outer edge where it had been tramped over; that the sidewalk had not been cleaned off at that place in the months of January and December. A. N. Ferguson, witness for the plaintiff, testified to having visited the place where the injury was sustained, and described its condition like this: As far as I can recollect, it seems to me that it was a rough condition of the walk; that it was covered with ice except possibly for a little space along by the curb line; that it seemed to be more or less ridged; that in the center and toward the bank, which

was some two or three feet high on the west from the sidewalk, there was quite a little strip there that was icy and snowy, and to a certain extent was ridged and uneven and rough; its ridges were something like four inches high, more or less, like the sidewalk had been covered with ice for a long time, and icy; sidewalk with some snow on it at various places; it was not smooth but was uneven; the sidewalk was covered with this ice largely; along the edge where the curb line is there were places where it had entirely disappeared, and at the center toward the walk it was higher and ridged up. The witness Shafer testified that the walk was full of ice and was very rough; had a covering of ice all the way from one inch to three or four inches, it had little bumps in it; that the ice was higher near the bank than it was near the curb, and was several inches high near the center of the walk.

This evidence is set out somewhat at length for the purpose of comparison with the evidence set out in the case of *Foxworthy v. City of Hastings*, 25 Neb. 133. In that case a verdict for the defendant was set aside by this court as not being supported by the evidence, and there seems at least to be as much reason for supporting the judgment in this case as there was for reversing the judgment in the *Foxworthy* case. In other words, if the evidence in the *Foxworthy* case showed a sufficient accumulation of ice and snow, such as to constitute an obstruction and impediment to travel, to justify this court in setting aside a verdict for the defendant as being contrary to the evidence, the evidence in this case, disclosing a similar condition of the walk, was sufficient to justify the submission of the case to the jury; and the case having been so submitted, and the jury having found for the plaintiff, and a judgment having been entered thereon, it should not be disturbed.

We recommend that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.