664 A.2d 1326

COMMONWEALTH of Pennsylvania, Appellee,

v.

Gary Lee STARR, Appellant.

Supreme Court of Pennsylvania.

Argued March 7, 1994.

Decided Aug. 29, 1995.

566

570

Samuel M. Pontier, Lester G. Nauhaus, Public Defender, Shelley Stark, Chief–Appellate Division, for appellant.

Robert E. Colville, District Attorney, Claire C. Capristo, Deputy District Attorney, Kemal A. Mericli, Assistant District Attorney, James R. Gilmore, Robert A. Graci, Deputy Attorney General, (For Attorney General).

Before NIX, C.J., FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION OF THE COURT*

CASTILLE, Justice.

This is an automatic direct appeal to the Supreme Court from the judgment of sentence of death imposed upon appellant,[1] Gary Lee Starr, by the Allegheny County Court of Common Pleas, Criminal Division. For the reasons set forth below, we vacate the trial court's judgment of sentence and remand the matter to the Allegheny County Court of Common Pleas for a new trial.

Before appellant's trial in this matter, Dr. Robert Wettstein of the Western Psychiatric Institute and Clinic conducted three psychiatric interviews with appellant and interviews with his family and friends. After a battery of neuropsychological and neurolaboratory testing, Dr. Wettstein determined that appellant was mentally competent to stand trial. Later, motions were filed with the Honorable Robert E. Dauer of the Allegheny County Court of Common Pleas in which appellant waived his right to the assistance of counsel at trial and asserted his right to represent himself at trial. Following a hearing and a thoroughly probing colloquy, the trial court permitted appellant to proceed *pro se* and the Allegheny County Public Defender's Office was directed to act as stand-by counsel.

Later, the case was transferred to the Honorable Jeffrey A. Manning, also of the Allegheny County Court of Common Pleas, and further pre-trial motions were filed. Following a hearing, each motion was denied. However, in addition to denying these motions, Judge Manning revoked Judge Dauer's earlier order granting appellant the right to self-representation and the court then ordered the Public Defender's Office to assume control of appellant's defense at trial and at sentencing. Defense counsel then moved for a continuance, which the court denied. In accordance with the second trial court's order, the Public Defender's Office proceeded with representation of appellant at trial.

1. *See* 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b) and 1941.

Following a two-day trial before Judge Manning, the jury found appellant guilty of first-degree murder.[2] The trial court conducted a brief death penalty hearing on August 23, 1988, after which the jury found two mitigating circumstances [3] and one aggravating circumstance.[4] After weighing the aggravating and mitigating circumstances, the jury set the penalty at death. On September 27, 1988, the second trial court formally imposed the death penalty. On October 17, 1991, the trial court denied all outstanding post-trial motions and post-sentencing motions. A timely notice of appeal was filed with this Court with subsequent amended notices of appeal and this Court heard oral argument on March 7, 1994.

■ The sole issue for our consideration is whether the second trial court erred when it revoked appellant's right to represent himself by rescinding the first trial court's June 22, 1988, ruling accepting appellant's waiver of counsel.[5] At the outset, this Court has long recognized that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions. *See, e.g., Okkerse v. Howe*, 521 Pa. 509, 516–517, 556 A.2d 827, 831 (1989). This rule, known as the "coordinate jurisdiction rule," is a rule of sound jurisprudence based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency. *Id. See also Golden v. Dion & Rosenau*, 410 Pa.Super. 506, 510, 600 A.2d 568, 570 (1991) (once a matter has been decided by a trial judge the decision should remain undisturbed, unless

**2.** 18 Pa.C.S. § 2502(a).

**3.** The jury found the following mitigating circumstances: (1) that defendant was under the influence of extreme mental or emotional disturbance (42 Pa.C.S. § 9711(e)(2)); and (2) that there was other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense (42 Pa.C.S. § 9711(e)(8)).

**4.** The jury found as an aggravating circumstance that appellant had been previously convicted of the murder of his first wife. *See* 42 Pa.C.S. § 9711(d)(11) (the defendant has been convicted of another murder, committed either before or at the time of the offense at issue).

**5.** Appellant asserts numerous other issues for this Court's consideration. However, given that our disposition of this first issue results in an order for a new trial, we need not consider these other issues.

574

the order is appealable and an appeal therefrom is successfully prosecuted).

In our view, this coordinate jurisdiction rule falls squarely within the ambit of a generalized expression of the "law of the case" doctrine. This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. *See* 21 C.J.S. Courts § 149a; 5 Am.Jur.2d Appeal and Error § 744. Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court. *See* Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation,* 135 U.Pa. L.Rev. 595, 602 (1987) (*citing* A. Vestal, *Law of the Case: Single–Suit Preclusion,* 12 Utah L.Rev. 1, 1–4 (1967)) (*hereinafter "Judicial Puzzle"*).

The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy (as does the coordinate jurisdiction rule) but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end. 21 C.J.S. Courts § 149a; *Judicial Puzzle* at 604–605. In our view, these considerations should have weighed heavily on the second trial court's reconsideration of the first trial court's order which granted appellant's right to represent himself. The various policies which motivated the

development of these rules and which continue to motivate the enduring existence of both the coordinate jurisdiction rule and the law of the case doctrine are of paramount importance in the context of a criminal proceeding where the criminal defendant and his counsel must be allowed to proceed to trial with an established trial strategy and with the security of knowing, for example, that he either will or will not be permitted to represent himself or that his pre-trial statements either will or will not be introduced against him at trial. In this regard, these rules seek to ensure fundamental fairness in the justice system by preventing a party aggrieved by one judge's interlocutory order to attack that decision by seeking and securing relief from a different judge of the same court, thereby forcing one's opponent to shift the focus of his trial strategy in the matter. *See Commonwealth v. Washington*, 428 Pa. 131, 133 n. 2, 236 A.2d 772, 773 n. 2 (1968) (citation omitted) (a trial judge cannot reverse on the same record at trial the decision made after the pretrial suppression hearing that defendant's statement need not be suppressed). *See also Golden, supra*, at 506, 600 A.2d 568, 410 Pa.Super. at 511, 600 A.2d at 570 (once an interlocutory pretrial decision has been rendered, the party in whose favor that decision was rendered must be allowed to rely on it and proceed in accordance with it). Accordingly, our consideration of the second trial court's order within the context of the law of the case doctrine and the coordinate jurisdiction rule weighs heavily against a finding that the second trial court properly rescinded the first trial court's order permitting appellant's *pro se* representation. *See Lipchik v. Erie County*, 126 Pa.Commw. 347, 351, 559 A.2d 988, 990 (1989) (trial judge's denial of continuance which was ordered by previous judge constituted reversible error).

Further, the limitations on the law of the case doctrine and on the coordinate jurisdiction rule are virtually identical, thereby again suggesting that the Pennsylvania coordinate jurisdiction rule may be properly considered as part of the family of rules making up the law of the case doctrine. Departure from either of these principles is allowed only in exceptional circumstances such as where there has been an

intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Compare Musumeci v. Penn's Landing Corporation*, 433 Pa.Super. 146, 151–152, 640 A.2d 416, 419 (1994), *appeal denied*, 539 Pa. 653, 651 A.2d 540 (1994) (the coordinate jurisdiction rule applies in all cases except where newly-discovered evidence or newly-developed legal authority compel a result different than that reached by the first judge) and *Commonwealth v. Brown*, 485 Pa. 368, 371, 402 A.2d 1007, 1008 (1979) (where the evidence is substantially the same as that originally ruled upon by the first judge, a second judge commits a *per se* abuse of discretion in overruling or vacating the prior order) (citations omitted) *with* 21 C.J.S. Courts § 149b (same).

However, notwithstanding the numerous similarities between the law of the case doctrine and the coordinate jurisdiction rule, the traditional application of the law of the case doctrine in Pennsylvania jurisprudence has been limited to only those cases in which an appellate court has considered and decided a question submitted to it upon appeal (*see, e.g., Brown's Estate*, 408 Pa. 214, 230, 183 A.2d 307, 315 (1962) and *Reamer's Estate*, 331 Pa. 117, 122, 200 A. 35, 37 (1938)). The law of the case doctrine was not fully and definitively articulated by a Pennsylvania court until 1938 when this Court did so in the case of *Reamer's Estate, supra*. Robert R. Rice, *Bonfitto v. Nationwide Mutual Ins. Co.: The Law of the Case Doctrine in Pennsylvania*, 66 Dick.L.Rev. 201, 203–204 (1962). There, this Court relied on, *inter alia*, the case of *Hastings v. Foxworthy*, 45 Neb. 676, 63 N.W. 955 (Neb.1895), wherein the Nebraska Supreme Court exhaustively traced the origin and development of the limited expression of the law of the case doctrine. *Reamer's Estate*, 331 Pa. at 123 n. 4, 200 A. at 37 n. 4. In *Foxworthy*, the Nebraska high court opined that the "appellate only" restriction on the doctrine arose from the notion that once an appellate court issues an order in a particular case, it loses jurisdiction over the case and, thereby, the power to modify its judgment. *Foxworthy*, 45 Neb. 676,

63 N.W. at 959. The determination of those questions which led to its appellate judgment constitute a "final" adjudication which may not be lightly disturbed in later stages of the litigation. *Id.* In following the reasoning of *Foxworthy* and the particular language of *Reamer's Estate,* this Court has previously declined to apply the law of the case doctrine to those cases in which no appellate decision has been rendered. *See, e.g., Filanowski v. Zoning Board of Adjustment,* 439 Pa. 360, 363, 266 A.2d 670, 672 (1970) (the law of the case is established only by a decision of an appellate court); *Kuchinic v. McCrory,* 422 Pa. 620, 626, 222 A.2d 897, 900 (1966) (the law of the case doctrine, which only applies to appellate courts, should not be confused with either *res judicata* or *stare decisis* ).

Accordingly, by suggesting that this Court will henceforth extend its understanding of the law of the case doctrine to include the concepts embodied not only by the traditional Pennsylvania formulation of that principle but by the coordinate jurisdiction rule as well, we recognize the seeming contrast this creates in our caselaw. However, we feel that although our traditional formulation of the law of the case doctrine comports with the origins and early development of the doctrine as expressed in *Foxworthy, supra,* our extension today of the law of the case doctrine to include the coordinate jurisdiction rule amounts to nothing more than a distinction without a difference. The purposes served by both rules and the limitations regulating both rules are virtually identical; the integration of both rules, then, does not represent any profound departure from the precedential mandate of our traditional formulation of the law of the case doctrine.

■ Further, we note that in extending the law of the case doctrine to include the coordinate jurisdiction rule we conform the Pennsylvania formulation of that doctrine to that of the federal courts and of the courts of many of our sister states. *See, e.g., Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988) and *Fagan v. City of Vineland,* 22 F.3d 1283, 1290 (3d Cir.1994) (law of the case doctrine recognizes that a successor

judge should not lightly overturn a decision of his predecessor judge in the same case); *UniGroup, Inc. v. Winokur,* 45 F.3d 1208, 1211 (8th Cir.1995) (law of the case doctrine provides that when an appellate court decides a question of law, the decision should govern the trial court's consideration of such questions on remand); *Merritt v. Mackey,* 932 F.2d 1317, 1320 (9th Cir.1991) (under the law of the case doctrine a panel of an appellate court will not as a general rule reconsider questions which another panel of that court has decided in a prior appeal in same case). *See also Kaplan v. Pointer,* 501 A.2d 1269, 1270 (D.C.1985); *Kuiken v. Garrett,* 243 Iowa 785, 792, 51 N.W.2d 149, 154 (1952), *superseded by statute (on other grounds) as stated in Hockenberg Equipment Co. v. Hockenberg's Equipment & Supply Co. of Des Moines, Inc.,* 510 N.W.2d 153, 159 (Iowa 1993); *Second National Bank of Malden v. Leary,* 284 Mass. 321, 324, 187 N.E. 611, 612 (1933); *Tenzer, Greenblatt, Fallon & Kaplan v. Capri Jewelry, Inc.,* 128 A.D.2d 467, 468, 513 N.Y.S.2d 157, 159 (1st Dep't 1987); and *Judicial Puzzle, supra,* at 602 (detailing the various rules making up the law of the case doctrine). Accordingly, we today assume the coordinate jurisdiction rule and all its attendant meanings and limitations expressed in our previous caselaw into our law of the case doctrine in an effort to standardize and streamline the law to which our courts must refer when considering prior rulings of courts of coordinate jurisdiction and of courts of appellate jurisdiction in the same litigated matter.

Applying this more comprehensive rule to the instant facts, on June 22, 1988, the trial court that first heard appellant's motion to proceed *pro se* conducted a thorough colloquy into whether appellant knowingly and voluntarily waived his right to the assistance of counsel at trial. Based on its examination, the first trial court admonished appellant that the choice to proceed *pro se* was unwise; nonetheless, satisfied that appellant knowingly, voluntarily, and intelligently waived his right to counsel, it ordered that appellant be permitted to represent himself, that the Public Defender's Office withdraw as appellant's counsel, and that the Public Defender's Office act as

appellant's standby counsel. The court then transferred the case to the second trial court because of its inability to proceed with appellant's trial by the scheduled trial date, a date fixed by appellant's assertion of his right to a speedy trial. *See* Pa.R.Crim.P. 1100 (trial must commence no later than 180 days from the date on which a criminal complaint is filed).

On August 15, 1988, the trial court to which the matter was transferred reopened the first trial court's order that appellant be allowed to represent himself at trial, conducted its own colloquy on the question of appellant's understanding of his waiver of the right to counsel, and consequently revoked appellant's right to proceed *pro se* on the basis that appellant could not intelligently waive the right to counsel because, *inter alia*, appellant "[did] not [express] what the Court considers an adequate reason to give up his constitutional right to have a competent attorney represent him." Transcript of 8/15/88 at 60. The second trial court then appointed the attorneys from the Public Defender's Office to thereafter assume control of appellant's defense even though those attorneys admitted on record that they would not be prepared to proceed to trial by the scheduled trial date. *Id.* at 64–66.

The Commonwealth does not argue and our review of the record does not reveal any new evidence which would have permitted the second trial court, in accordance with the law of the case doctrine, to disturb the prior ruling of the first trial court, a court of coordinate jurisdiction, regarding appellant's right to self-representation. Moreover, the Commonwealth does not assert and our review of the record does not reveal any substantive change in the relevant legal authority between the time the first trial court ruled upon appellant's motion and the time the second trial court revisited the issue. Accordingly, the second trial court's order vacating the first trial court's order granting appellant's right to proceed *pro se* represents an abuse of discretion as a matter of law. *See Brown, supra,* at 485 Pa. 368, 402 A.2d 1007, 485 Pa. at 371, 402 A.2d at 1008 (where the evidence is substantially the same as that originally ruled upon by the first judge, a second judge commits a *per se*

abuse of discretion in overruling or vacating the prior order). The second trial court's order therefore undermined the policies supporting the law of the case doctrine in that its order upsetting the first trial court's order operated (1) to attack, not protect, appellant's and appellant's standby counsel's settled expectation that appellant would be allowed to represent himself; (2) to jeopardize, not insure, the uniformity of decisions coming from that court; (3) to abandon, not maintain, the goal of coherent management of a single case during its course through the courts; (4) to debilitate, not effectuate, the proper administration of justice; and (5) to threaten to send appellant, his counsel, and the prosecution into an unending circle of litigation, not to bring his case to a conclusion. *See* 21 C.J.S. Courts § 149a and *Judicial Puzzle* at 604–605, *supra* (detailing the various purposes served by the law of the case doctrine). Again, our determination that the second trial court's order undermined each of the policies and purposes behind the law of the case doctrine leads us inextricably to the conclusion that the second trial court improperly rescinded the first trial court's order which initially permitted appellant to represent himself at trial.

However, notwithstanding the foregoing analysis of the procedure by which the second trial court issued its order, we also find that, as a matter of substance, the second trial court denied appellant his constitutionally-guaranteed right to represent himself. A criminal defendant has a long-recognized constitutional right to dispense with counsel and to defend himself before the court. *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975) (implicit in the structure of the Sixth Amendment is the right of a criminally accused to conduct his own defense); *Commonwealth v. Szuchon,* 506 Pa. 228, 250, 484 A.2d 1365, 1376–1377 (1984) (an accused has a right to conduct his own defense pursuant to Article 1, Section 9 of the Pennsylvania Constitution).[6] In short, this highly personal constitutional right oper-

6. Appellant frames this claim within the context of the Sixth Amendment to the U.S. Constitution and of Article 1, Section 9 of the Pennsylvania Constitution but claims no heightened protection of his

ates to prevent a state from bringing a person into its criminal courts and in those courts force a lawyer upon him when he asserts his constitutional right to conduct his own defense. *Faretta, supra,* at 807, 95 S.Ct. at 2527.[7] Further, the denial of a criminal defendant's right to proceed *pro se* is not subject to a harmless error analysis. *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984) ("the right to self-representation is either respected or denied; its deprivation cannot be harmless").

▮▮▮▮ Before a defendant is permitted to proceed *pro se,* however, the defendant must first demonstrate that he knowingly, voluntarily and intelligently waives his constitutional right to the assistance of counsel. *Faretta, supra,* at 835, 95 S.Ct. at 2541; *Szuchon, supra,* 506 Pa. at 250, 484 A.2d at 1377. If the trial court finds after a probing colloquy that the defendant's putative waiver was not knowingly, voluntarily or intelligently given, it may deny the defendant's right to proceed *pro se. See, Commonwealth v. Richman,* 458 Pa. 167, 175, 320 A.2d 351, 355 (1974) (right to counsel not waived because waiver not knowingly and intelligently given). The "probing colloquy" standard requires Pennsylvania trial courts to make a searching and formal inquiry into the questions of (1) whether the defendant is aware of his right to counsel or not and (2) whether the defendant is aware of the consequences of waiving that right or not. *Szuchon, supra,* 506 Pa. at 250, 484 A.2d at 1377 (trial judge must make searching inquiry into defendant's request to proceed without counsel). *See also* Pa.R.Crim.P. 318(c) (when the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether the waiver was made knowingly, voluntarily and

right to self-representation from our state constitution. Accordingly, we evaluate appellant's claim under the assumption that the protections afforded by each constitutional provision are co-extensive. *Cf. Commonwealth v. Edmunds,* 526 Pa. 374, 392–399, 586 A.2d 887, 896–899 (1991) (Article 1, Section 8 of the Pennsylvania Constitution provides broader protection against unreasonable searches and seizures than the Fourth Amendment to the United States Constitution).

7. This right to self-representation applies even in a Pennsylvania death penalty case. *Szuchon, supra,* 506 Pa. at 250, 484 A.2d at 1376.

intelligently). Specifically, the court must inquire whether or not: (1) the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent; (2) the defendant understands the nature of the charges against him and the elements of each of those charges; (3) the defendant is aware of the permissible range of sentences and/or fines for the offenses charged; (4) the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules; (5) defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and (6) the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, the objection to these errors may be lost permanently. Comment to Pa.R.Crim.P. 318.

Here, the second trial court, the prosecutor, and one of the attorneys representing the Office of the Public Defender each examined and cross-examined appellant regarding whether he understood his right to counsel and whether he understood the consequences of waiving that right. *See* Transcript of 8/15/88 at 23–50. Although this second colloquy was not as extensive as the colloquy the first trial court directed, the second trial court expressly referred to the transcript of the hearing at which the first trial court, the same prosecutor and the same attorney from the Public Defender's Office had previously conducted a thorough colloquy and accepted appellant's waiver of his right to counsel based on their collective determination that appellant understood his rights and understood the ramifications of his decision. Transcript of 8/15/88 at 23–24 (*referring to* Transcript of 6/22/88 at 12–42). For example, at the first trial court's colloquy, appellant was questioned about his familiarity with the different degrees of homicide, about the elements of the murder offense with which appellant was charged, about the evidence of aggravating

circumstances which would be introduced against him, about the rules of courtroom procedure and evidence, about possible defenses he had available to him, and about grounds for appellate relief. Transcript of 6/22/88 at 28–42. Our review of the record of both the first trial court's colloquy and the second trial court's colloquy reveals that each of the six factors outlined in the comment to Pa.R.Crim.P. 318, *supra*, were sufficiently provided for appellant's consideration. Accordingly, we believe appellant was adequately informed of his right to counsel and of the consequences of waiving that right sufficient to permit him to render a knowing, intelligent and voluntary waiver of his right to counsel and to permit him to assert his right to proceed *pro se*.

The remaining question, then, is whether it was error for the second trial court to determine that appellant, who had been adequately informed of the dangers and consequences of choosing self-representation, could not therefore intelligently waive his related right to counsel because, *inter alia*, appellant "[did] not [express] what the Court considers an adequate reason to give up his constitutional right to have a competent attorney represent him." Transcript of 8/15/88 at 60. As stated, both the Federal Constitution and the Pennsylvania Constitution require only that in order to validly assert the right to self-representation, a defendant's waiver of the corollary right to counsel be knowing, intelligent and voluntary. *Faretta, supra,* 422 U.S. at 835, 95 S.Ct. at 2541; *Szuchon, supra,* 506 Pa. at 250, 484 A.2d at 1377. In turn, a waiver of the right to counsel may be considered "knowing and intelligent" based simply on a finding that the defendant in fact understands both the significance and consequences of the decision to waive counsel. *Godinez v. Moran,* — U.S. —, — n. 12, 113 S.Ct. 2680, 2687 n. 12, 125 L.Ed.2d 321 (1993) (*citing Faretta, supra,* 422 U.S. at 835, 95 S.Ct. at 2541); *Commonwealth v. Monica,* 528 Pa. 266, 273, 597 A.2d 600, 603 (1991) (citations omitted).

In that regard, a consideration of the defendant's best interests (i.e., that the defendant would be subject to less

risk of conviction and/or consequently more severe punishment if represented by competent counsel) is wholly irrelevant to an assessment of whether a criminal defendant has rendered a knowing and intelligent waiver of his right to the assistance of counsel or not. *See Faretta, supra,* at 834, 95 S.Ct. at 2540–41 (defendant's right to self-representation upheld even though it is almost always in a defendant's best interests to have the representation of counsel at trial). When a trial court reaches out in an effort to protect what it considers to be a criminal defendant's best interests and in so doing fundamentally denies that defendant's constitutional right to self-representation, that defendant's constitutional right to *pro se* representation is rendered, at best, illusory:

> [C]ourts should not manipulate the knowing and intelligent waiver standard in order to protect the best interests of the defendant. Otherwise, trial court judges could second guess not only the decision to waive the right to counsel, but also such matters as waivers of jury trial and other similar rights. This would shift the focus of these decisions away from self-determination and toward the trial court's view of justice.

Randall B. Bateman, Comment, *Federal and State Perspectives on a Criminal Defendant's Right to Self-Representation,* 20 J.Contemp.L. 77, 121 (1994).

 Our trial courts are constrained to abide by a collective view of justice as expressed in our state constitution and in the federal constitution and in the opinions of this Court and of the United States Supreme Court. That collective view of justice includes the notion that although a defendant "may conduct his own defense ultimately to his own detriment, his choice [of self-representation] must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Faretta, supra,* 422 U.S. at 834, 95 S.Ct. at 2541 (*citing Illinois v. Allen,* 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1064–65, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)). In short, our trial courts are not free to insist upon their own conception and expression of what the law should be at the expense of denying a criminal defendant's assertion of a vital

constitutional right merely because the trial court thinks it knows what is best for the defendant. Accordingly, when the second trial court here stated on the record that appellant could not intelligently waive his right to counsel because appellant "[did] not [express] what the Court considers an adequate reason to give up his constitutional right to have a competent attorney represent him" (Transcript of 8/15/88 at 60), the second trial court impermissibly substituted its own judgment for that of appellant's. There is no room in our constitutional jurisprudence for such an action by our trial courts.

 Furthermore, an evaluation of a criminal defendant's technical legal knowledge and courtroom skill is not relevant to an assessment of his knowing and intelligent exercise of the right to defend himself. *Faretta, supra,* 422 U.S. at 836, 95 S.Ct. at 2541. This approach, like the "best interests" approach, represents the kind of paternalistic concern for a criminal defendant expressly rejected in *Faretta.* Here, the second trial court asked appellant (1) his education level; (2) how many times he had been in court; (3) if he had ever represented himself at a criminal trial; (4) if he had ever conducted *voir dire;* (5) if he had ever conducted a cross-examination; (6) if he had ever called witnesses or presented evidence to a court; and (7) if he had ever argued facts or law to a court. Transcript of 8/15/88 at 26–29. For each of these questions, the trial court warned appellant that the Public Defender's Office could better perform each of these functions on appellant's behalf. *Id.* In our view, these questions and their attendant admonishments lead us to the conclusion that the trial court impermissibly evaluated appellant's ability to conduct his own defense which, under *Faretta,* the trial court was not permitted to do. Such inquiry and concern is simply inconsequential to a determination of whether a criminal defendant in fact understands the danger he summons by choosing to waive counsel.

Finally, although the second trial court determined that appellant could not intelligently waive his right to counsel with regard to counsel's assistance at trial, the court made other

rulings and statements from the bench indicating that it believed that appellant did indeed understand both the significance and consequences of the decision to waive counsel. To the extent these other rulings and statements by the second trial court recognized appellant's appreciation of his right to counsel, they represent a fundamental contradiction of the court's denial of appellant's right to self-representation. In turn, to the extent the court's denial of appellant's right to *pro se* representation is fundamentally contradicted by these other rulings and statements, we defer to the inherent value of recognizing appellant's assertion of his constitutional right to self-representation.

First, in its written opinion on this issue, the second trial court stated that appellant could not intelligently waive his right to counsel because "despite appointed counsels' repeated advice to the contrary, [appellant] contacted one of the detectives who had been assigned to his case in order to make certain statements relating to a knife found at the scene of the crime" and there he "voluntarily made inculpatory statements ... [and then] filed a *pro se* motion to suppress that very statement." *Commonwealth v. Starr*, 49 Pa.D. & C.3d 144, 149 (Allegheny CCP, Aug. 18, 1988). The court stated that appellant's action in making a statement to the police without the assistance of counsel did not "[demonstrate] the 'good judgment and sound reflection' the law requires of one who is seeking to invoke his constitutional right to waive counsel." *Id.* at 149. However, on an earlier motion to suppress two earlier incriminating statements made by appellant, the second trial court expressly ruled that appellant chose to forego his right to counsel during the police interrogations conducted on February 21, 1988, by signing a written rights waiver form. Transcript of 7/26/88 at 46–49.[8] In accordance with the second trial court's finding that appellant validly waived the right to

8. We also note that the Commonwealth concedes that appellant validly waived his constitutional right to counsel with regard to these statements. *See* Brief for Appellee at 63 ("Thus, appellant effectively waived not only his Fifth Amendment right to counsel, but more importantly his Sixth Amendment right to counsel in this case at that time of the written waiver.")

counsel for these two statements, the trial court denied appellant's motion to suppress these statements (*id.* at 47–48) and these two statements were introduced against appellant at trial (*see* Transcript of 8/17/88 at 313–325 and 330–340).

■ Accordingly, the second trial court found that for purposes of making incriminating statements to the police, appellant could and, in fact, did intelligently waive the right to counsel; but, that same trial court also found that for purposes of representing himself at trial, appellant could not intelligently waive the right to counsel. We find these two rulings from the same trial court fundamentally contradictory and wholly inexplicable. We know of no authority (and the Commonwealth directs our attention to none) which supports the notion that the standard for finding a valid waiver of the assistance of counsel varies according to the stage at which a putative waiver of that right is asserted. To the contrary, the U.S. Supreme Court's jurisprudence, which has concentrated primarily on the right to counsel and the prohibition against compulsory self-incrimination, has set an invariable standard for a valid waiver of such constitutional guarantees; i.e., that such waivers be knowingly, voluntarily, and intelligently rendered. *See* Brian R. Boch, *Fourteenth Amendment—The Standard of Mental Competency to Waive Constitutional Rights Versus the Competency to Stand Trial,* 84 J.Crim.L. & Criminology 883, 889–890 (1994) (citations omitted). Accordingly, because the standard for finding a valid waiver of any of these constitutional rights is invariable, there is no principled basis upon which it may be asserted that the standard for finding a valid waiver of the assistance of counsel varies according to the stage at which the waiver is asserted. It is therefore inconceivable to us how the second trial court could rule on July 26, 1988 (the date of the suppression hearing), that appellant could and did assert an intelligent waiver of the right to the assistance of counsel and then, less than three weeks later, rule that appellant was somehow incapable of asserting an intelligent waiver of the right to counsel.

■ Secondly, at the sentencing hearing the second trial court made the following statement: "I just want it to be clear on the record, ... despite the odd nature of [appellant's] letters [to the court stating] 'Bring me in and sentence me so I can have T.V.,' people might generally conclude that [appellant] must be 'nuts' but I don't see it that way based upon my knowledge of this case, based upon his background and experience, *that he clearly understands what is going on* and he has made that conscientious choice [to expedite sentencing]." Transcript of 9/27/88 at 7 (emphasis supplied). To the extent this statement evidences the belief of the second trial court regarding appellant's appreciation of the nature of the proceedings against him, this statement fundamentally belies the trial court's other ruling that appellant could not intelligently waive the right to counsel. Therefore, since the standard for evaluating a criminal defendant's waiver of counsel is whether the defendant in fact understands both the significance and consequences of that decision (*Godinez, supra,* —— U.S. at —— n. 12, 113 S.Ct. at 2687 n. 12 and *Monica,* 528 Pa. at 273, 597 A.2d at 603), if the second trial court was correct in believing that appellant "clearly understood what was going on" with respect to the proceedings against him, the trial court erred in finding that appellant's waiver of counsel was not intelligently rendered.

Finally, the second trial court opined that appellant could not intelligently waive the right to counsel because he had a history of psychiatric illness and because he was then under the influence of two prescriptions for relaxants for which the court believed that "there is sufficient medical information to support our conclusion that these behavior modifying drugs may well have affected and continue to impair [appellant's] ability to execute an 'intelligent' waiver of counsel." *Starr, supra,* at 150–151.[9] These assertions by the second trial court

9. Inexplicably, the second trial court did not directly cite to any such competent "medical information" to support its broad conclusion that these medications impaired appellant's ability to understand the nature of the proceedings against him. Rather, the trial court cited the Physician's Desk Reference for the prospect that these medications are prescribed for individuals who are anxious, tense, apprehensive, ove-

sound in the nature of an assertion that appellant did not possess the *ability* to understand the significance and consequences of the decision to waive counsel because of his history of psychiatric illness and behavior-modifying medications, not that appellant merely did not *in fact* understand the consequences of his decision to request self-representation. Indeed, on many occasions, the second trial court repeatedly asserted either that appellant was "incapable of" waiving counsel (*see id.* at 149–151) or that appellant "could not" waive counsel (*see* Transcript of 8/15/88 at 61, 62 and 71).

We note that "the focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." *Godinez, supra,* —— U.S. at —— n. 12, 113 S.Ct. at 2687 n. 12 (*citing Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975)) (emphasis supplied).[10] Further, the competency standard for waiving the right to counsel is precisely the same as the competency standard for standing trial, and is not a higher standard. *Id.* at ——– ——, 113 S.Ct. at 2685–2686. Accordingly, since the standard for evaluating a criminal defendant's ability to stand trial and ability to waive counsel are precisely the same, if the second trial court was correct in finding that appellant was "incapable of waiving the assistance of counsel," the trial court should have also found that appellant was incapable of standing trial. *See* 50 P.S. § 7402 (the trial court, either on application or on its own motion, may order a competency examination at any stage in the proceedings). *See also Drope, supra,* 420 U.S. at 180–181, 95 S.Ct. at 908–909 (a competency determination is necessary when a trial court has reason to doubt the defendant's ability

rexcited or depressed. *Starr, supra,* at 10–11 (*citing* Physician's Desk Reference at 1400–02, 2036–39 (1988)).

10. On the other hand, the "purpose of the 'knowing and voluntary' inquiry ... is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* (*citing Faretta, supra,* 422 U.S. at 835, 95 S.Ct. at 2541).

to understand the proceedings).[11] If, on the other hand, the trial court erred in finding that appellant was incapable of waiving counsel, the trial court erred in denying appellant his right to *pro se* representation. In either case, the second trial court erred.

Of these two choices, we find that, based on our exhaustive review of the record, the second trial court erred in denying appellant the right to represent himself at trial. Appellant has a constitutional right to represent himself and must be accorded that right upon a knowing, voluntary and intelligent assertion to do so. In determining that appellant could not enjoy his right to *pro se* representation, the trial court (1) erroneously reversed the reasoned order of its predecessor court of coordinate jurisdiction without any substantive change in the evidence or controlling law than that considered by the first trial court; (2) erred in considering appellant's best interests and his technical ability to conduct his own defense; and (3) erroneously considered appellant's appreciation of the consequences attendant to a waiver of the right to the assistance of counsel at trial as fundamentally different than appellant's recognized appreciation of the other aspects of the proceedings against him. Simply put, the second trial court's order denying appellant his constitutionally-guaranteed right to self-representation is without substantive basis in fact or in law.

Accordingly, the judgment before us is vacated, and the matter is remanded back to the Allegheny County Court of Common Pleas for a new trial. *Faretta, supra,* 422 U.S. at 836, 95 S.Ct. at 2541–42.

11. On this point the Commonwealth argues that the trial court's use of the phrase "competence to waive counsel" was merely a shorthand reference for the "intelligent and competent waiver" standard expressed in *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Brief for Appellee at 78 (*citing Godinez, supra,* —— U.S. at ——, 113 S.Ct. at 2688). We find this argument groundless given the trial court's repeated use of the reference to appellant's "incapability" to waive counsel. Framed in this manner, we are left with the abiding belief that the second trial court believed that appellant indeed was incapable of intelligently waiving counsel.

PAPADAKOS, J., did not participate in the decision of this matter.

NIX, C.J., concurs in the result.

MONTEMURO, J., is sitting by designation.