J-S67025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW DAVIDOFF, | |
| Appellant | No. 386 MDA 2015 |

Appeal from the Order Entered January 30, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000707-2014

BEFORE:  BOWES, PANELLA AND PLATT*, JJ.

DISSENTING MEMORANDUM BY BOWES, J.:          **FILED MARCH 01, 2016**

I respectfully dissent from the majority's resolution of this appeal and the appeal 424 MDA 2015.  Based on the doctrine of the law of the case, I would vacate the orders granting restitution and remand for entry of orders denying restitution.

These two appeals arise from the same bar fight that occurred at approximately 1:45 a.m. on August 18, 2013 at The Phyrst bar on 111 East Beaver Avenue, State College.  Appellants Kelly Patrick Meenan and Matthew Davidoff were in their twenties and attending a family celebration when the incident occurred.  Both men were charged with disorderly conduct and simple assault.  On July 21, 2014, they entered pleas of *nolo contendere* to simple assault in exchange for a sentence of probation, but they expressly

retained the right to oppose restitution.[1]  That same day, the plea court imposed a probationary term and awarded AmTrust North America Incorporated ("AmTrust"), which was The Phyrst's worker's compensation insurance carrier, $41,103.95 in restitution jointly and severally against Appellants.  AmTrust was being reimbursed for amounts it expended in connection with a knee injury sustained by Brandon Lonich, a bouncer who was working at The Phyrst on August 18, 2013, when the fight occurred. Appellants filed petitions to amend the restitution order averring that the Commonwealth did not prove, at any proceeding, that the criminal act of simple assault committed by each Appellant caused Lonich's knee injury.

On November 17, 2014, these matters proceeded to a joint restitution hearing before the Honorable Bradley P. Lunsford.  At that time, the Commonwealth increased the amount of restitution it was seeking to $83,915.95, which included medical costs and worker's compensation benefits that AmTrust had paid to, or on behalf of, Lonich.

_____

[1]  The plea agreement substantiates that Appellants retained the right to challenge restitution, and the Commonwealth concedes the same. Commonwealth's brief at 7 ("the terms of the plea agreement allowed Meenan and Davidoff to challenge the amount of restitution").  For this reason, I agree with the majority that the trial court erred as a matter of law in holding that restitution could be awarded herein based solely upon the fact that Appellants entered *nolo contendere* pleas in these actions.  That ruling was contrary to the terms of the plea agreements.

Lonich testified as follows as to the events that caused his knee injury. On the night in question, Davidoff approached the bar to get a drink and asked Lonich to move. When Lonich continued to stand in the same place, Davidoff said, "Move out of my way." N.T. Restitution Hearing, 11/17/14, at 6. In response, Lonich, who was not in uniform, said, "I work here. Hold on." *Id*. Davidoff forcibly "nudged [Lonich] out of the way so he could get through" and walked towards the bar. *Id*. Lonich signaled the bartender not to serve Davidoff and told Davidoff that he was visibly intoxicated and would not be served additional drinks and had to leave. Davidoff refused to leave and smacked down Lonich's hand when Lonich pointed at the door. Lonich then "grabbed [Davidoff's] hand and pushed it," and the two men began to engage in "a pushing shoving match." *Id*. at 7. Lonich explained that he and Davidoff grabbed each other simultaneously and began to push against one another. While Lonich and Davidoff were pushing each other, one of the other bouncers, Zachary Scogna, entered the fray and removed Davidoff. That was the extent of Davidoff's participation in the events leading to Lonich's knee injury.

Lonich continued with his version of what occurred on August 18, 2013. An older unknown man pushed Lonich after Davidoff was grabbed by Scogna. Lonich claimed that, at that point in time, Meenan placed his hands around Lonich's neck from behind, and Lonich removed his hands. Lonich testified that Meenan then "bear hugged me from behind, lower toward my

waist." *Id*. at 9. Lonich next tried to remove Meenan's hands from his waist. Lonich told the court that Mennan then jumped on his back, they both fell to the ground, Meenan punched him, and, when Lonin attempted to stand up, he felt "extreme pressure and pain around my knee." *Id*. Lonin sought medical treatment for the knee injury. Scogna also testified but said that he did not view Lonich fall to the ground. *Id*. at 29.

Lonich was the only witness at the restitution hearing who said that the knee injury was sustained when Meenan jumped on him and pushed him to the ground. Appellants, on the other hand, introduced into evidence two prior inconsistent statements that Lonich made regarding the mechanism of his injury. While Lonich was being treated at Mount Nittany Medical Center immediately after the incident, he told the doctors that "he was in a fight at work when he fell to the ground" and that "his knee twisted and he heard a pop" while "he was at the bottom of a pile of people." *Id*. Meenan's Exhibit 1 at 3. State College Police Officer Christopher Tooley testified on behalf of the Commonwealth. He admitted that he interviewed Lonich at the medical center on August 18, 2013, and that Lonich said that he fell during the fight, not that a bar patron jumped on him and pushed him to the ground. *Id*. at 50.

Officer Tooley also interviewed Davidoff. Davidoff told him that he "was at the bar and for no reason at all, bouncers came, grabbed him by the throat, took him into a back room." *Id*. at 43. Davidoff said that four

bouncers then kicked him and threw him into the parking lot. Meenan told Officer Tooley that he was involved in some shoving and pushing but denied that he punched or kicked anyone. *Id*. at 44.

In addition to the two prior inconsistent statements refuting Lonich's testimony about how he sustained his knee injury, Appellants presented a number of witnesses who contradicted his version of the initiation of the bar fight. Ryan Hilliard was an independent eyewitness who had not met Davidoff, Meenan, or any member of their family before August 18, 2013. He testified that he observed the following. Lonich gestured for Davidoff to leave the bar. When Davidoff refused, Lonich started to physically remove him. At that point, Scogna went over to help Lonich, and they began to shove Davidoff toward the back exit of the bar. Members of Davidoff's family ran over and tried to stop the altercation. Hilliard saw one of the relatives being thrown to the ground.

Another independent eyewitness unfamiliar with Appellants or their family, Aran Kirvan, testified consistently with Hilliard. He reported that Lonich initiated the physical confrontation with Davidoff by grabbing him. When Davidoff pushed back, Lonich tried to wrap his arms around Davidoff, and Scogna came over and started throwing punches. Kirvan said that members of Appellants' family tried to diffuse rather than escalate the situation.

Meenan also presented the testimony of Tyler Higgins, the bartender on duty at the time of the fight. Higgins directly refuted Lonich's testimony that Meenan jumped on his back and pushed him to the ground. Higgins said that Lonich was pushed against a wall and fell and that Meenan was behind Lonich when Lonich was pushed against the wall so that Meenan could not have pushed Lonich. Higgins testified that Meenan "was not involved" in any physical altercation that led to Lonich's knee injury. *Id*. at 97. Higgins explained that he had pushed "Meenan up against the wall and held him there" after Lonich fell from being pushed by the unknown individual. *Id*. at 98.

Two members of Appellants' family testified consistently with what Davidoff told Officer Tooley on the night of the incident: that Davidoff was being attacked by four bouncers when other family members became involved to break up the fight. Meenan testified that he was going to become involved in the situation after seeing Davidoff being attacked by the four bouncers but was prevented from doing so by Higgins.

At the end of this testimony, Judge Lunsford specifically ruled that he was unable to determine how Lonich was injured. He observed that there were "two totally different sides to this story," one was that the bouncers attacked Davidoff while members of Davidoff's family were trying to cease the assault and the other version, which was the one proffered solely by Lonich, was that Davidoff started the physical confrontation by swatting

away his hand. *Id*. at 129. Judge Lunsford observed that the people involved in the altercation were "either being punched and are sober or people who are drunk. So, the facts in this case are so diluted, and I'm not sure that I can find appropriate facts" for the imposition of restitution. *Id*. at 129. That jurist described the incident as "a scrum or a melee," and said, "And none of us were there . . . **I don't know what happened. I really don't know what happened**." *Id*. at 129-30 (emphasis added). Judge Lunsford specifically noted that, according to all the witnesses, Davidoff was completely uninvolved in the fight once Scogna pulled him away from Lonich. *Id*. at 130. Judge Lunsford repeated, "The fact is, though, nothing is clear in a bar at 1:45 in the morning, even those that are sober. **And I can't imagine how you could produce any witness who could say definitely what happened either way**. That's why I'm not particularly concerned about the facts, I'm looking at the law here." *Id*. at 137 (emphasis added).

Once the Commonwealth was faced with this clear resolution of the facts, it began to argue that Davidoff and Meenan were jointly and severally liable as if they were joint tortfeasors and that Davidoff set in motion the series of events that resulted in Lonich's injuries so that he was liable for restitution on that basis. The Commonwealth insisted that anyone involved in the chain of events that led to Lonich's injuries could be held responsible for restitution. Appellants countered that the law did not permit restitution

to be imposed based upon such a theory of causation. In response to the parties' respective positions, the court ordered them to submit briefs on the law regarding causation in the restitution setting.

For reasons that do not appear of record, Judge Lunsford was thereafter removed from all criminal cases, with exceptions that are not applicable herein, and the Honorable Jonathan D. Grine was assigned to these matters. Judge Grine issued a ruling imposing restitution in the full amount requested by the Commonwealth without a transcript of the restitution hearing and without conducting another hearing.

On appeal, Appellants claim, *inter alia*, that the doctrine of the law of the case prevented the imposition of the restitution award. Initially, I observe that the Commonwealth's position on the law at the restitution hearing was legally erroneous. A defendant can be ordered to pay restitution only when the victim "suffered personal injury directly resulting from the crime[.]" 18 Pa.C.S. § 1106. As noted by the majority, the law requires that there be a direct causal connection between the crime and the loss. Herein, the Commonwealth produced no evidence that linked Davidoff's actions to any injury suffered by Lonich, who said that his knee was injured when Meenan pushed him. The restitution award against Davidoff should be stricken as a matter of law.

With respect to Meenan, Judge Lundsford expressly and repeatedly ruled at the restitution hearing that it was impossible to ascertain how

Lonich sustained his knee injury. He deferred ruling on the question of restitution solely to obtain memorandum on the legal issue of causation. Judge Lunsford was the jurist who heard the witnesses and could judge their credibility. By stating that he could not determine how Lonich was injured, Judge Lunsford necessarily concluded that Lonich did not testify truthfully at the restitution hearing that his knee was injured when Meenan jumped on him and pushed him to the ground. Notably, Lonich was the only person who said that Meenan's actions injured his knee, and his testimony at the restitution hearing was directly refuted by two statements that Lonich made at the time of his injury. Hilliard, an independent witness and employee of The Phyrst, said that Meenan did not push Lonich to the ground.

The doctrine of the law of the case embodies "the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). The law of the case doctrine includes the precept that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court." *Id*. In *Starr*, our Supreme Court noted that it had "long recognized that judges of coordinate jurisdiction sitting in the same case should not overrule each others' **decisions**." *Id*. (emphasis added).

- 9 -

Herein, Judge Lunsford resolved the question of whether Meenan caused Lonich's injuries. He rendered a decision as to the precise issue before him at the restitution hearing, stating that it was not possible to tell how Lonich was injured. After Judge Lunsford's clear and unequivocal factual rulings at the restitution hearing, the only matter to be resolved herein was whether, without knowing how Lonich injured his knee, restitution could be imposed under the law.

Thus, Judge Grine, who imposed the restitution award, violated the coordinate jurisdiction rule in this matter by failing to properly apply the law to the facts, as found by the jurist who presided at the restitution hearing. I am unpersuaded by the Commonwealth's position that Judge Lunsford had to issue a formal order or findings of fact in order for the law of the case doctrine to apply. The doctrine pertains to the resolution of a question by a jurist. The first issue that Judge Lunsford had to resolve at the restitution hearing was whether any criminal act by Davidoff or Meenan caused Lonich's knee injury. That jurist decided unequivocally that the mechanism of his injury could not be determined.

The doctrine of the law of the case can be ignored only "where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Commonwealth v. Hernandez*, 39 A.3d 406, 412 (Pa. 2012).

There was no change in the law or facts and Judge Lunsford's ruling is not a manifest injustice.

Hence, I would vacate the orders awarding restitution in these criminal matters and remand for entry of orders denying restitution.