J-S29030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHEED JOHNSON | : | |
| | : | |
| Appellant | : | No. 488 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 10, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0007811-2017.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY KUNSELMAN, J.:            **FILED OCTOBER 26, 2021**

Rasheed Johnson appeals from the judgment of sentence imposed following his conviction of rape, aggravated indecent assault, robbery, kidnapping, witness intimidation, possessing a criminal instrument, and three counts of violation of the Uniform Firearm Act ("VUFA").[1]  We affirm.

The trial court set forth the relevant factual and procedural background as follows:

> This case stems from [Johnson's] heinous actions on December 31, 2016, when he forcibly entered a woman's car in Germantown, demanded she drive to a secluded alleyway, and then proceeded to sexually assault and rob her at gun-point.  That day, at approximately 4:00 p[.]m[.], the victim (C.B.) began her shift working as a delivery person for Amazon.  Between the hours

---

* Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3121(a)(1), 3125(a)(1), 3701(a)(1), 2901(a)(2), 4952(a)(1), 907, 6105(a)(1), 6106(a)(1), 6108.

of 4:00 p[.]m[.] and 6:00 p[.]m[.], she was scheduled to be delivering packages in the Northwest section of Philadelphia. At approximately 4:24 p[.]m[.], C.B. got out of her vehicle at 49 East Cliveden Street in Philadelphia to deliver a package. When she unlocked the doors to get back into her vehicle, [Johnson] opened her passenger-side door and entered her vehicle. At first, the complainant believed that [Johnson] was mistaken and told him to get out of her car. When [Johnson] did not get out of the car, C.B. said, "get the fuck out of my car." [Johnson] then took out a gun, pointed it at C.B., and said, "don't move, don't do anything stupid!" [Johnson] then shoved the gun to the side of C.B.'s body and said, "I'm not playing, just drive!"

As [C.B.] drove, [Johnson] directed [her] which way to turn at every intersection, and she did as he said, fearing for her life. C.B. did not know where she was and just continued to follow [Johnson's] direction. [Johnson] then told her that he needed her debit card, to which she responded that she did not have a card and only had $20 cash in her wallet. [Johnson] finally directed C.B. to a dead-end alleyway located at 5900 Chew Avenue in Philadelphia. He then demanded her to turn off her car and open the packages in the back seat. C.B. opened a package, but the only thing inside the package was iron hangers. [Johnson] became frustrated and commanded her to get in the back seat. When she did not initially comply, he grabbed her hair and pulled her to the back seat of her car. [Johnson] then forced the gun to C.B.'s backside and told her to take off her pants. A struggle ensued and [Johnson] digitally penetrated her vagina, then he put on a condom and vaginally raped her with his penis.

After [Johnson] had finished raping C.B., he told her to put on her pants and drive. She complied. [Johnson] told her to drive to the intersection of Germantown and Duval Streets. While [C.B.] was driving there, [Johnson] stole the cash from [her] wallet, took her identification card out, and took a picture of her ID with his cellphone. [Johnson] stated, "if you call the cops I will be at your house, and if you have kids they're going to get hurt."

When they arrived at the intersection of Duval and Baynton Streets, C.B. pulled over to allow [Johnson] out of the car. [Johnson] reached over to remove C.B.'s keys from the ignition, he placed the keys on the railing next to the car, and told her that once she didn't see him anymore, she was free to take the keys and leave. [Johnson] shut the passenger door and left. Once C.B.

didn't see [Johnson] anymore, she took the keys, drove to the train station at Washington Lane, and called the police. Once the police arrived, they drove her around to search for [Johnson] and record the scene of the crime. After a short time, officers transported C.B. to the Special Victims Unit where the case was assigned to Detective Robert Conn of the Line Squad.

Detective Conn ensured that officers held C.B.'s car and that it was towed to the police garage at 4298 Macalester Street in Philadelphia. Detective Conn then placed the items recovered from the sexual assault examination on property receipts and submitted them to the lab for DNA testing. On January 2, 2017, Detective Conn contacted the Crime Scene Unit to take latent prints from the vehicle. Thereafter, he drafted and executed a search warrant for the inside of the vehicle. Two weeks later, on January 17, 2017, Patrick Raytik of the Latent Print Unit Laboratory concluded that the impressions taken from outside the vehicle were suitable for individualization and that [Johnson's] fingerprints were on the outside of the vehicle. On January 26, 2017, Detective Conn assembled a photo array which was administered by Detective Owens of the Special Victims Investigations Unit. C.B. identified [Johnson] as the person who raped her on December 31, 2016.

[Johnson] was arrested on January 31, 2017 by the United States Marshalls Violent Crimes Fugitive Task Force for an outstanding warrant and for absconding from state parole. [Johnson's] cellphone was recovered at that time and historical cell site analysis was conducted for [Johnson's] cell site data. FBI Task Force Officers and Philadelphia Detectives Anthony Vega and James Dunlap performed the cell site analysis. The analysis revealed that [Johnson] was in fact in the area of the abduction and rape at the exact time of the crime. Thereafter, Pennsylvania State Police performed a forensic analysis on [Johnson's] cellphone. On it, they found a photograph of C.B.'s identification taken on the date of the crime[, as well as three photographs of Johnson holding a gun.] [Johnson's] Google history revealed that he had searched the phrases "rapes caught on camera in Philadelphia" and "arrest warrant Rasheed Johnson" approximately two hours after he committed the rape and robbery.

Trial Court Opinion, 11/16/20, at 1-4 (citations to the record omitted).

The matter was initially assigned to one judge but then reassigned to two others as the case progressed. The matter proceeded to trial in December 2018; however, a mistrial was declared, and a retrial was ordered. The case was reassigned to a fourth judge and the matter proceeded to a second trial in October 2019. On October 24, 2019, a jury convicted Johnson of the above-referenced charges. On January 10, 2020, the trial court sentenced Johnson to an aggregate sentence of forty-six to ninety-two years in prison. The trial court also imposed sex offender conditions, including lifetime registration with state police and complying with all Tier III Megan's Law requirements. Johnson filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Johnson raises the following issue for our review: "Did the trial court err when it overruled a prior trial court's ruling precluding the introduction of a photograph of [Johnson] possessing a firearm?" Johnson's Brief at 3.

Johnson contends that the trial court violated the "law of the case" or "coordinate jurisdiction" doctrine by disregarding a ruling made by a different judge earlier in the case. Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). More simply stated, judges of the same court should not overrule each other's decisions. *Id*. As a claim alleging a violation of the

coordinate jurisdiction rule presents a question of law, our standard of review is *de novo* and our scope of review is plenary. ***See Jones v. Rivera***, 866 A.2d 1148, 1150 (Pa. Super. 2005).

Johnson argues that prior to his first trial, the Commonwealth litigated a Pa.R.E. 404(b) motion to introduce a photograph of Johnson found on a phone in his possession that showed him holding a firearm. Johnson argued against the admission of the photograph on the basis that no weapon was recovered and the photograph was taken three days after the incident. Johnson claims that the first trial court ruled, "I'm not going to allow photos . . . unless something comes up during trial where the issue can be raised again. But for purposes of the case in chief, I'm not going to allow it." Johnson's Brief, at 12 (quoting N.T., 12/3/18, at 49).

Johnson contends that the second trial court overturned the previous trial court's ruling on the basis that the first trial court judge's "perception was skewed by misstatements made by defense counsel; [and] the evidence provided to this court in full, live fashion had not occurred when Judge Bright made her preliminary respective view of the situation." ***Id***. at 12-13 (quoting N.T., 10/21/19, at 66). Johnson argues that neither statement was true nor supported by the record, and that the second trial court's ruling undermined the policies supporting the law of the case and coordinate jurisdiction doctrine.

Here, Johnson's reliance on the law of the case and coordinate jurisdiction doctrine is misplaced. As explained above, the core of the doctrine

is that a court acting at a later stage of a case should not reopen questions decided at an earlier stage by another judge of the same court or by a higher court. *See Starr*, 664 A.2d at 1331. However, the grant of a new trial wipes the slate clean so that a previous court's ruling on the admissibility of evidence generally does not bind a new court upon retrial. *See Commonwealth v. Paddy*, 800 A.2d 294, 311 (Pa. 2002). Thus, because the evidentiary ruling in question was made in connection with Johnson's first trial and prior to the grant of a retrial, the ruling was not binding upon the court during Johnson's second trial. *See id*. Accordingly, as the doctrine does not apply in the present procedural context, Johnson's sole issue on appeal merits no relief.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2021

---

[2] Additionally, the trial court correctly noted that the previous judge left the matter open for further review when she ruled the photograph inadmissible "unless something comes up during trial," which it did. *See* N.T., 12/3/18, at 49. Finally, Johnson makes no alternative argument that, in the event the doctrine is inapplicable, the photograph was nevertheless inadmissible. Thus, we need not undertake an admissibility analysis in the present matter.